# KATHERINE JONES WARNER v. DEVA JONES MARONEY et al.

Eastern Section. May 27, 1932.

Petition for Certiorari denied by Supreme Court, October 15, 1932.

J. C. Wilburn, of Knoxville, T. W. Peace, of Madisonville, J. B. Sizer, of Chattanooga, and Burns & Michael, of Athens, for appellant.

John Jennings, Jr., and Ray H. Jenkins, both of Knoxville, and R. B. Witt, of Madisonville, for appellees.

PORTRUM, J.   In the year 1919 Mrs. Margaret W. Jones, a widow, seventy years of age, lived upon her valuable farm of twelve hundred acres, in Monroe County, which she had inherited many years before from her ancestors.   She was the mother of a large

family which is marked by tragedy; she was widowed by the murder of her husband, and some years later a son was murdered, and since her death the accused, Ole Bull Jones, was killed in an automobile accident, and since the institution of this lawsuit another son, Dr. Barkley J. Jones, his wife and an adopted child, were all murdered on Christmas Eve by a befriended negro servant who paid for the crime with his life.

Prior to the year 1919 Mrs. Jones had given an option on this farm to the Globe Realty Company, a firm engaged in the sale of real estate by auction, at a stipulated price of $50,000. She became dissatisfied with this agreement and thinking she was not bound by it she repudiated it. The Globe Realty Company sued her for damages for the breach of the contract, averring that the farm was worth $75,000 and should have been sold by it for this sum, and seeking to recover the difference in the contract price and the value of the farm, or the sum of $25,000. This suit was never successfully prosecuted, and is important now only as influencing the future action and conduct of Mrs. Jones.

Ole Bull Jones, a son of some prominence, and a resident of the City of Knoxville, possessed the confidence of his mother; he advised with her in reference to her business affairs. She was a woman in poor health and had been suffering with a cancer for a number of years, and died with this malady in April, 1925. She suffered much from mental anguish on account of the murder of her husband and son.

On December 17, 1919, Mrs. Margaret W. Jones conveyed her farm to her son, Ole Bull Jones, for a recited consideration of $1000 paid and the execution of a note, secured by a vendor's lien, in the sum of $39,000, due fifteen years from date, or in December, 1934, and without interest before maturity. At this time another son was living upon the farm and operating it, and Mrs. Jones was dissatisfied with the management and conduct of this son. Ole Bull Jones took control of the farm, but his mother remained upon the farm and collected and paid over proceeds from the farm. This deed was a warranty deed and covenanted against encumbrance; but at the time the land was encumbered by a mortgage of over $14,000 in favor of the Union Central Life Insurance Company; $10,000 of this money had been raised by Mrs. Jones for her son, Lara J. Jones, who lived in Louisiana, and was loaned to him by his mother upon his note in order to set him up in business. This farm was the principal, if not the sole valuable asset of Mrs. Jones, but perhaps she considered the note of her son Lara as a valuable asset and expected the proceeds from this note to discharge $10,000 of the mortgage against the farm. Later, Lara

claims to have paid a part of this note, and the balance of the debt was forgiven him, by his mother.

This deed was withheld from the record in the Register's office until 1922 or 1923, when Mrs. Jones wrote to her son, Ole Bull Jones, and suggested that the deed be then registered. After the receipt of this letter the grantee registered the deed.

From the date of the execution of the deed up until the death of the mother in 1925, Ole Bull Jones made certain payments on the note, which are credited upon the back of the note and signed by Mrs. Jones, notwithstanding no payments were due, aggregating more than $18,000. Upon these credits Ole Bull Jones claims interest from the date of the payments.

On March 7, 1924, Mrs. Margaret W. Jones executed her will; she gave her son, Ole Bull Jones, the sum of $5, and under the third clause she gave to her three sons, Barkley J. Jones, Lara J. Jones, and Maultrie Jones, and her two daughters, Katherine J. Warner and Deva Jones Maroney, and a granddaughter, Barkley Kennedy, share and share alike all her property of every nature, description and kind, real, personal and mixed, wheresoever situated, located or to be found. In the fourth clause she recited that she had conveyed to Charles C. Jones, another son, a farm in Monroe County, containing approximately four hundred acres, and for this reason no provision was made for his widow and children in the will. Under the fifth clause she appointed Ole Bull Jones the executor and expressly excused him from giving bond.

Mrs. Margaret W. Jones died in 1925, and Ole Bull Jones qualified as here executor. He entered upon the administration of her estate in the County Court of Knox County, Mrs. Jones at the time of her death being a resident of Knox County.

More than two years later, or on December 15, 1926, Maultrie Jones filed a bill in the Chancery Court of Knox County against Ole Bull Jones as executor of the will of Margaret W. Jones, and in his individual capacity, and making all the beneficiaries under the will of Margaret W. Jones defendants, charging that Margaret W. Jones died testate in Knox County, setting out the will in full; and that Ole Bull Jones, as the executor named in said will, had made an improper disposition of the personal property of the estate at a sale of the property. Further alleging the estate owned or should own a note executed by Ole Bull Jones to Margaret W. Jones on the 17th day of December, 1919, in the sum of $39,000. due and payable fifteen years from date. And the note was a lien against the large and valuable farm situated in Monroe County, describing it. The bill charged that no part of this note had ever been paid and that Ole Bull Jones was seeking to cover up, hide and conceal the assets of the estate for the purpose of

rendering the interest of the complainant worthless. The bill further alleges that the executor "is actually claiming to have paid on the note due from him to the estate the sum of $18,875." This claim on the part of the executor is charged to be false and fraudulent and made for the purpose of cheating and defrauding the beneficiaries under the will. And by reason of the illegal and fraudulent designs of Ole Bull Jones there is danger that the valuable estate of Margaret W. Jones, which should in truth and in fact be worth no less than $40,000, will be rendered insolvent and that he should be required to give a sufficient bond or be removed from his trust. And it is charged that if the estate be allowed to pend in the County Court until 1934, and the executor holding both possession of the note and the farm securing the same, he will in time so manipulate and destroy same as to render the interest for the beneficiaries under the will entirely worthless. The bill alleges that it was filed for the purpose of having all the rights of interest of all the parties entitled to benefits under said bill adjudicated and settled. The bill sought to have the administration of the estate removed from the County Court to the Chancery Court, and the sale of the undue note for immediate distribution. The bill was signed and sworn to by the complainant, Maultrie Jones, and subpoenas were issued and served upon the defendants with the exception of one, who was a non-resident, and publication was made for this one.

Ole Bull Jones answered the bill, admitting the transfer of this farm to him in 1919, and the execution of the $39,000 note by him and due in 1934, stating that his deed was recorded in the Register's office of Monroe County in 1923. That the complainant knew for six years before his mother's death that she had made this deed to the defendants, and knew the terms and conditions thereof. He denied that he owned the entire $39,000 represented by the note, given for the purchase of the farm, but stated his indebtedness on the note had been reduced by the sum of $18,875 by credits appearing upon the back of the note. He denied specifically the allegation of fraud or act of bad faith on his part in the administration of the estate. He resisted a sale of the note for immediate distribution, on the ground that its value could not be realized upon a sale.

The defendant Lara J. Jones answered this bill and averred: That he has read and understands the answer filed to said original bill by the defendant, Ole Bull Jones, and that for the sake of brevity he adopts said answer as the answer of himself to said original bill. He signed and swore to this answer. The defendants, Barkley J. Jones, Deva Jones Maroney, Barkley Kennedy, and Katherine Jones Warner, filed a joint answer in which they

say: That they have read and understood the answer filed by Ole Bull Jones and that for the sake of brevity they adopt said answer as the answer of each of them respectively; this answer is signed in person by each of these defendants.

Proof was taken and the Chancellor decreed that Ole Bull Jones was not guilty of the charge made against him, and that he was liable to the estate for the $39,000 note less the credits appearing thereon and aggregating $18,875. A sale of the note was denied. The complainant appealed to the Court of Appeals, and the decree of the Chancellor was affirmed. The Court of Appeals speaking through Judge Thompson states in the opinion:

"Altogether she credited his $39,000 note to her with the sum of $18,875 and she agreed that $9,605.16 of these credits should draw interest in his favor at the rate of six per cent per annum. We do not think there is the slightest doubt about the genuineness of these credits in favor of Ole Bull Jones."

Pending this appeal Ole Bull Jones was killed, and his death was suggested and admitted, when his sister, Deva Jones Maroney, duly qualified as the administratrix of the will of Margaret W. Jones with the will annexed. A petition for certiorari to review the decree of the Court of Appeals was filed in the Supreme Court, and on October 19, 1929, this writ was denied.

In 1928 Ole Bull Jones died testate, leaving a will executed on May 8, 1925, and which was probated on May 28, 1928. Under this will he bequeathed Robert P. Boyd $5000; and Miss Adelia Armstrong $5000; and the balance of his estate of every kind and character he bequeathed to Miss Pattie R. Boyd, and appointed her the executrix under the will.

A little more than one year after the death of Ole Bull Jones, and while the case filed against him as the executor of his mother was pending in the Supreme Court, the original bill in this case was filed on July 2, 1929.

Katherine J. Warner and husband joined with Maultrie Jones and wife as complainants, and named as defendants Deva J. Maroney as the executrix with the will annexed of Katherine J. Jones, and individually; Dillan Maroney joining her husband, and Barkley Kennedy, Dr. Barkley J. Jones, Lara J. Jones and Edwina Jones, and also Pattie R. Boyd and Robert Boyd. The interest of the parties complainants and defendants were adverse to the interest of the defendants Pattie R. Boyd and Robert P. Boyd.

The bill sought first to set the deed of 1919 of Mrs. Margaret W. Jones to Ole Bull Jones aside as void, because at the time of its execution the grantor was incapable by reason of mental infirmity of executing the conveyance; that the deed was procured by Ole Bull Jones through his fraud and undue influence, and

the recited consideration was not paid and was never intended to be paid, and that the consideration was inadequate; and second, that the deed was executed to Old Bull Jones in trust for the grantor and her heirs. It sought to declare and set up a resulting trust, not in the heirs of the grantor but in the devisees under the will of the grantor.

The defendants who claimed under the will of Ole Bull Jones answered the bill and denied that the grantor was incapable or incompetent of executing the instrument at the time she did, and that it was procured through undue influence on the part of Ole Bull Jones, and they also denied that there was any intention to convey the land to the grantee in trust for the grantor and her heirs. And as a defense it was averred that the case above referred to, of Maultrie Jones versus Ole Bull Jones, Executor of the estate of his mother, in which the parties were all before the court, was an adjudication of the question involved in this lawsuit, and a plea of res adjudicata was plead and relied upon (we have heretofore quoted the substance of this bill and the answer). This case was also made the basis of a plea of a judicial estoppel, and an estoppel in pais, and laches of the parties was relied upon and pled. A certified copy of the record in the case of Maultrie Jones versus Ole Bull Jones, including the opinion and decree of the Court of Appeals, and the decree of the Supreme Court denying the writ, were referred to and filed as exhibits to the answer.

After the filing of this answer the following complainant and defendants in the original bill filed an amended bill, to-wit: Katherine J. Warner, Deva J. Maroney, Barkley Kennedy and Lara J. Jones. Maultrie Jones was dropped as a complainant and made a defendant in the amended bill. The executor of the estate of Barkley J. Jones, who had been killed in the meantime, was made a party defendant to the amended bill.

This pleading alleged that the complainants were not made parties in the cause of Maultrie Jones versus Ole Bull Jones by service of process upon them. That they did not answer the bill, and did not sign their answers or authorize anyone to sign their answers for them. That they did sign a paper at the solicitation of their brother, Ole Bull Jones, who represented to them that Maultrie Jones was attempting to remove him as the executor of his mother's estate. That they signed this paper without reading it, and that they did not know the contents of Ole Bull Jones' answer to the bill of his brother. That Ole Bull Jones procured their signatures to these papers by fraud and deception, and they signed them without knowledge of the contents; and further, some say they did not know of the execution of the deed by their mother to Ole Bull Jones in 1919, until after Ole Bull Jones' death, while

others say they thought Ole Bull Jones was holding the land in trust and did not know he was violating the trust until after his death and the publication of his will. By this pleading they seek to avoid the effect of the former adjudication in the Maultrie Jones versus Ole Bull Jones case, and destroy it as a res adjudicata, and a judicial estoppel binding against them. They asked for a jury to try the issues arising under the original and the amended bill. This pleading was answered, and the case came on for trial before the jury.

Seventeen separate issues of fact were prepared and submitted to the jury; proof was heard in open court and at the conclusion of the complainants' proof the defendants moved the Court for a directed verdict upon each and all of the issues of fact. The Court sustained this motion upon the determinative issues, and directed the jury to find that the grantor was capable and understood her act when she executed the deed; that there was no undue influence proven, on the part of Ole Bull Jones, or otherwise; and that the deed was not made in trust for the grantor and her heirs, and no resulting trust was established. He held the issues in the two cases were not the same and the plea of res adjudicata was not established, but he held the parties were estopped to now prosecute these issues, and that they were chargeable with notice and of long delay and were guilty of laches which barred the right to prosecute the suit. The jury responded as directed, and a decree was entered from which the complainants have appealed to this court.

The appellants have filed three assignments of error, the first raising four issues, and reading as follows:

"The Chancellor erred in directing a verdict in favor of the defendants on the issues (a) whether Mrs. Margaret W. Jones was of sound mind and capable of understanding what she was about when she executed the deed in controversy; (b) whether said deed was executed as a result of any fraud or misrepresentation practiced on her by Ole Bull Jones; (c) whether said deed was executed as the result of undue influence exercised by Ole Bull Jones; (d) whether Ole Bull Jones agreed with Mrs. Jones to hold said land in trust for her and her heirs, and whether Mrs. Jones intended by said deed to convey said land absolutely to Ole Bull Jones."

We understand that the rule is elementary that there can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence, or reasonable inference to be drawn therefrom in favor of the complainant. We have enforced this rule so often we do not think we will have any difficulty in bearing it in mind in passing upon each of the issues raised on this appeal.

(a) We do not think there is any evidence to carry this case to the jury on the theory that Mrs. Jones was of unsound mind and incapable of understanding what she was doing when she executed the deed. The appellants in the brief concede facts justifying this conclusion, but they say her mind was not so clear, her will not so firm, and her understanding and powers of reasoning and discernment were not so acute as they had been or they would be in a normal person. This condition might render her susceptible to the influence of designing persons, but will not justify a legal conclusion that she was incapable mentally of transacting business. The appellants' witnesses on cross-examination testified that she was a woman above the ordinary intelligent woman; the appellants vouch for these witnesses, and not having been taken by surprise by their testimony, they are in no position to contradict it.

(d) For the time being we will pass over (b) and (c) and consider first (d): under this issue the parties seek to raise a resulting trust in Mrs. Jones and her heirs in the land. To establish this issue a mere preponderance of the evidence is not sufficient, for it is required the evidence be clear, cogent and convincing. Judge Freeman says: "The proof must be most convincing and irrefragable." (Hyden v. Hyden, 65 Tenn., 406). This rule of evidence modifies the scintilla evidence rule, and the trial judge passing upon a motion for a directed verdict must find some clear, cogent and convincing evidence before he is justified under the law in submitting the issue to the jury. If there be a total absence of this character of evidence, then this rule of law is rendered nugatory if the trial judge submits the issue to the jury because he finds some evidence which sustains the issue. This Court discussing this question has said:

"The rule therefore, applicable to the present case, is that the Court will not disturb the verdict because it can be seen that there is some clear, cogent and convincing evidence to sustain the verdict." Wolfe v. Williams, 1 Tenn. App., 450.

We have been unable to designate any of the evidence tending to establish this issue as convincing. All the documentary evidence through which Mrs. Jones and her son, Ole Bull Jones, speak contradicts this theory; Mrs. Jones' will contradicts this theory, and the act of the appellant in claiming title under the will contradicts the theory, for the trust is asserted to be for Mrs. Jones and her heirs. The suit against the executor of Mrs. Jones' estate contradicts the theory, for had the purchase money note been sold to an innocent purchaser, the right, having existed, would have been lost. It is true some witnesses testify to declarations against interest made by Ole Bull Jones, and this character of evidence would be convincing if the Court is convinced that the declara-

tions were made. Therefore, there must be some convincing evidence that the declarations were made by Ole Bull Jones; it is easy, even in good faith, to construe the words of the dead in the interest of the living. Some of the parties testify that this question was agitated before the death of Mrs. Jones, and that Ole Bull Jones gave one of the brothers a written statement showing that he did not claim title but held the land in trust, and this brother turned this written statement over to the mother who put it in a black pocketbook which she kept under her pillow. And it is testified that Ole Bull Jones took this black pocketbook from under the pillow after his mother's death and the appellant could not produce the paper. No one saw Ole Bull Jones remove the pocketbook. If the parties have taken such pains to procure evidence of their rights, why did they act so inconsistently after their mother's death? Why did they wait until Ole Bull Jones died and his will was published, and another year while the case against the executor of Mrs. Jones' estate was being prosecuted in the Court of Appeals and in the Supreme Court? We do not think there is any convincing evidence that Ole Bull Jones made these declarations against interests, and therefore, the trial judge committed no error in taking this issue from the jury.

(b) (c). Undue influence is a specie of fraud, and these two issues will be treated as one. The facts and circumstances existing at the date of the execution of this deed, and the relationship between the grantor and the grantee, together with the terms and provisions of the deed establishes a case that should have been submitted to the jury upon the issue of undue influence. We think it fair to assume that the mother and grantor thought the farm worth at least $50,000; she sold it to her son for $40,000, $39,000 of the purchase price was payable fifteen years from date, and without interest. The sale considered as a sale of land was not an advantageous sale for the grantor, but was a peculiar one. The grantor was suffering with cancer, and must have anticipated her early demise, and the transaction considered as the disposition of her estate carries a different aspect. Taking this view of it the mother required the son to pay $40,000 for a $50,000 farm, and she made no provision for him in her will. A short time before she executed her will she directed her son to record the deed. The execution of the will at a time when she is not charged to have been under the influence of Ole Bull Jones, may be considered a ratification of the deed, if in fact she were unduly influenced, and the beneficiaries under the will estopped to question the deed for to do so defeats the intention of the mother through whose will they claim in her method in providing for her son, Ole Bull Jones, in her estate. Had the issue depended solely upon the circum-

stances surrounding the execution of the deed, then these circumstances would have been sufficient to cast the burden upon the defendant to explain and carry the case to the jury. Martin v. Martin, 48 Tenn., 644. But in view of the later acts of the mother at a time when she was not charged to have been under the influence of the son, we think the uncontradicted evidence shows a ratification, and that the appellants are estopped to defeat this ratification, and thereby work a disinheritance of Ole Bull Jones in his mother's estate. Counsel may insist that the Court is drawing inferences in reference to an estoppel that the jury would have been justified in drawing, and it is a case for the jury to draw these inferences in reference to the evidence that the farm is shown by some proof to be worth from $75,000 to $100,000, and the mother considered it to be worth over $50,000, and the will states what Ole Bull Jones should receive of the estate. Upon second thought we agree that this is the correct position. We are of the opinion that the trial judge erred in concluding that there was no evidence to carry this issue to the jury, but this error may be found to be an immaterial error.

We will now dispose of the third assignment which reads as follows:

"The Chancellor erred in holding as a matter of law that complainants were estopped and precluded by their answers in the suit of Maultrie Jones v. Ole Bull Jones, et al., from asserting the claims set up in this cause."

At the outset the appellants make a point that the record in the Maultrie Jones case is not a part of the record in this case. As heretofore stated, a certified copy of the transcript was exhibited as "A," "B" and "C" to the answer. There was no motion to strike, or exception taken to these exhibits in the lower court. The witnesses were examined upon these exhibits in the lower court, but no witness filed the exhibits as exhibits to his testimony. It is insisted that exhibits to a pleading cannot be made and treated as a part of the evidence unless they are again filed as exhibits to the testimony. In support of this position the case of Ramsey v. Temple, 3 Lea, 252, is cited. The case is not authority for the position taken, for there the exhibits were referred to as exhibits, but not filed. The bill stated conclusions and not facts, and the Court held that the allegations necessary to the bill could not be supplied by looking to other cases which are referred to as exhibits, but not filed. We think the case holds that it was necessary to file the exhibits, and this is the construction given to the case by the case of State Board v. Friedman, 150 Tenn., 181, 263 S. W., 75. See "Chancery Rules Codified," Shannon's Code 6311A1. We think the exhibits are a part of this record.

The record filed as an exhibit to the answer, and in support of the plea of estoppel, taken alone judicially estops the appellants to assert in this case a contrary position. The bill charged and relied upon the sale of the land to Ole Bull Jones and sought to defeat the payments credited upon the note, and the sale of the note for immediate distribution. The answer of Ole Bull Jones asserted the good faith of his purchase, and the correctness of the payments credited on the back of the purchase money note. The record contains answers signed by the appellants who were made defendants, and these answers assert that the defendants had read and understood the answer filed by the defendant Ole Bull Jones, and for brevity adopted his answer as their answer. This position is inconsistent with the position taken in this case. Without more the appellants would be judicially estopped to assert the position they now assert. Stamper v. Venable, 117 Tenn., 561, 97 S. W. 812; Stearns Coal & Lumber Co. v. Jamestown, 141 Tenn., 206, 208 S. W., 334; Johnston v. C. N. O. & T. P. Ry. Co., 146 Tenn., 138, 240 S. W., 429.

The appellants in their amended bill assert that they signed these answers through mistake induced by Ole Bull Jones, and that he will not be permitted by concealing material facts affecting their rights to assert and place an estoppel based upon their act induced by his fraud (Milwaukee Am. Assoc. v. Landon, 49 Fed. (2d), 298, 303). A person to be bound by a judicial estoppel must knowingly take a position, free from the inducement of the opposite party. In other words there must be none of the elements of a mistake innocently made. Issues were formed and submitted to the jury upon this question of fact. The appellants again testified to declarations against interest made by Ole Bull Jones, and if the jury believed the witnesses were testifying truthfully, then there would be evidence to support the issue. And the veracity of a witness is for the jury. The trial judge should not have directed the jury to answer this inquiry in the negative.

The remaining assignment of error reads:

"The Chancellor erred in holding that complainants were precluded from questioning the deed in controversy or from obtaining any relief in the suit because of their delay and negligence."

This assignment raises the question of laches, and by an inspection of the seventeen issues of fact submitted to the jury it will be seen that there was no issue of fact submitted to it raising this question of laches. In other words, if the jury had answered each of the seventeen issues of fact favorable to the appellants, the appellants' long delay and laches would not have been excused, nor any facts found bearing upon this issue. Therefore this issue

was one for the Court to be determined by the weight of the evidence as he found it. And it is to be reviewed in this Court de novo. Issues not submitted to a jury in a jury case are to be tried by the Chancellor under Chancery rules, and no motion for a new trial to raise non-jury issues is necessary. These issues are tried de novo on appeal. Cy Lyle v. Madison Bank, Washington County Equity, Memorandum Opinion by the Supreme Court at the September Term, 1929, at Knoxville.

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the rights. The disadvantage may come from the loss of evidence, change of title, intervention of equities, and other causes; but when a Court sees negligence on one side and injury therefrom on the other it is a ground for a denial of relief." Chase v. Chase, 20 R. I., 202, 37 Atlantic, 804; Pomeroy's Equity Jurisprudence, Vol. 4, Sec. 1441, et seq., page 3412; Equity 21 C. J., 210.

When a defense is grounded upon declarations against interest by a party, and that party is dead and cannot deny these declarations, and the parties have without reasonable excuse delayed prosecution of their claims until after the death of the opposite party, the conditions have materially changed. In this case if the appellants were successful the estate of Ole Bull Jones cannot be restored for the decree would disinherit him and he could not participate in his mother's estate. Under this issue we can look to the evidence to see if the mother intended to disinherit Ole Bull Jones, we think her acts evidenced an intention not to do so. We think the appellants knew, or are chargeable with knowledge of the condition, and that their negligent delay has worked a decided advantage in their favor, and an irretrievable injury to the opposing party. These facts were found by the Chancellor and are concurred in by this Court. They are grounds for a denial of relief in equity. The decree of the lower Court is affirmed.

Snodgrass and Thompson, JJ., concur.