ADAMS v. JACKSON et al.—126 S. W. (2d) 899.

Middle Section.    December 10, 1938.

Petition for Certiorari denied by Supreme Court, April 1, 1939.

A. A. Adams, of Lebanon, for complainant administrator.

A. A. Adams, Jr., of Lebanon, for defendant Alberta Jackson.

J. Carlton Loser, L. B. Loser, and R. C. Boyce, all of Nashville, for defendants, Arthur Williamson and others.

Cornelius, McKinney & Gilbert, of Nashville, for petitioner State of Tennessee.

A. O. Denning, of Gallatin, and O. W. Hughes, of Nashville, for petitioner United States.

CROWNOVER, J.   This is a War Risk Insurance case.

The original bill in this cause was filed, in 1932, by the adminis-

trator of the estate of Richard Williamson, deceased, an illegitimate, and a veteran of the World's War, to determine the rights of the various claimants to a fund of $10,116.70, the proceeds of a war risk insurance policy, which had been paid to him as administrator, on August 2, 1932, by the United States Veterans' Bureau.

Answers were filed by the widow, children, and for the minor heirs of a deceased son, of Henry Williamson, deceased, by his last marriage, alleging that Richard Williamson was the son of Henry Williamson by a former marriage; that Richard predeceased Henry; that respondents were entitled, through Henry, to said fund; and that Alberta Jackson, another claimant, was the illegitimate niece of Richard and therefore not entitled to inherit from him.

Alberta Jackson answered and alleged that Richard Williamson was an illegitimate child of Novella Tate; that Henry Williamson was his putative father, therefore he and his children were not entitled to inherit from him; that she was a daughter of an illegitimate sister of Richard, and entitled to inherit from him under the Acts of 1885, Chapter 34, section 1.

The State of Tennessee filed in the cause a petition pro inter esse suo to have said fund declared escheated to the State (Code, sec. 7751) and for its recovery on the ground that deceased insured left no heirs capable of inheriting the same; that the heirs of Henry Williamson cannot claim through a putative father; and that an illegitimate niece of an illegitimate sister of the illegitimate deceased insured has no right of inheritance.

The United States filed a petition in the cause to have said fund escheat to the United States for failure of heirs, the fund being the proceeds of a War Risk Insurance policy issued by the United States. U. S. C. A., Title 38, secs. 512, 514.

A guardian ad litem was appointed for the minor defendants, who answered, and publication was made for the unknown heirs of Richard Williamson.

Joe Tate et al., grandchildren of Patsy Tate, a sister of Life Tate, who was the mother of the illegitimate Novella Tate, the mother of the illegitimate Richard Williamson, filed their answer. This claim, which could not be maintained, was apparently abandoned.

Arthur Williamson, administrator of Henry Williamson, filed an intervening petition alleging that Henry Williamson had been designated the beneficiary in said insurance policy, and that he was entitled to be designated beneficiary, under the United States statute, although only a natural father, by reason of the fact that he had stood in loco parentis to the insured for more than a year prior to his enlistment, and during his minority, thereby acquiring the right to claim as a parent under the statute; therefore his administrator was entitled to collect the installments accruing between the death of Richard Williamson, in October, 1920, and the death of

the beneficiary, Henry Williamson, in 1928, amounting to about $4,000.

It appears that the first claim, that of inheritance through Henry, as the father of Richard, was abandoned.

█ And it appears that the administrator of Henry Williamson recognized that in no event could he receive more than the installments that had accrued, and were unpaid, up to the date of the death of Henry. Wade v. Madding, 161 Tenn., 88, 28 S. W. (2d), 642; U. S. C. A., Title 38, sec. 514; Luster v. Kite, 162 Tenn., 583, 39 S. W. (2d), 267; Eblen v. Jordan, 161 Tenn., 509, 33 S. W. (2d), 65; Newborn v. De Witt, 164 Tenn., 519, 51 S. W. (2d), 478.

█ Under the above cases the War Risk Insurance Acts now in force control.

The administrator of Richard answered the petition of the administrator of Henry denying that Henry had been named beneficiary and alleging that the policy was made payable to the estate of Richard, that the beneficiary was "himself." He filed as exhibits to his answer letters from officials of the United States Veterans' Bureau stating that no beneficiary was designated in the policy.

Alberta Jackson filed her answer to said petition denying that Henry was named beneficiary, that he had stood in loco parentis to Richard, and that he was entitled to be designated beneficiary. She filed as exhibits to her answer letters from the Veterans' Bureau stating that no beneficiary was named.

The Chancellor found and decreed that Alberta Jackson, niece of insured, was entitled to said fund and that no other party was entitled to any part of it; and he dismissed the suits of all other parties including the State of Tennessee and the United States.

Arthur Williamson, Margaret Williamson, Fannie Jackson, Arthur Williamson, administrator, the State of Tennessee and the United States perfected their appeals, and have assigned errors, which raise the following questions:

(1) Was Henry Williamson designated the beneficiary in said policy, and was he in the permitted class of beneficiaries?

(2) Did the Acts of 1885, Chapter 34, sec. 1, have the effect of granting the right of inheritance to the illegitimate child of an illegitimate sister of the illegitimate deceased?

(3) Should the fund escheat to the State of Tennessee?

(4) Or should it escheat to the United States?

The facts of the case, as shown by the record, are:

The deceased insured and the parties claiming the insurance as his heirs are all colored people, who live in Wilson County.

Novella Tate, the mother of the deceased insured Richard, was an illegitimate child of a daughter of a slave marriage. Novella had three illegitimate children: Tommy, Bertha and Richard. Henry Williamson was their putative father. Novella, Tommy and Bertha

predeceased Richard. Tommy died without issue. Bertha was survived by one child, Alberta Jackson, who was illegitimate, and who is one of the claimants in this suit. All those deceased have died since 1885.

Henry Williamson married Margaret Williamson, one of the claimants. They had three legitimate children: Arthur Williamson, Fannie Jackson, and another son who died leaving the minor defendants as his heirs.

It appears that Richard lived with Henry some of the time during his minority.

In 1917 or 1918, at the age of about 30, Richard became a soldier in the United States Army and procured a policy of insurance in the sum of $10,000, payable to his estate. He was injured in the World's War in line of duty, from which injuries he died in a Veterans' Hospital, on October 31, 1920.

The insurance had lapsed for non-payment of premium, but was reinstated upon the Veterans' Bureau receiving information that he was suffering from a service connected disability at the time he permitted his insurance to lapse.

Richard had never married, died intestate, and was a citizen of the State of Tennessee at the time of his death, in 1920.

Henry Williamson died on June 27, 1928, leaving a widow, Margaret Williamson, and the above named legitimate children. His son, Arthur Williamson, was appointed his administrator.

In May, 1932, A. A. Adams, Sr., was appointed administrator of the estate of Richard Williamson, deceased, and on August 2, 1932, the United States Veterans' Bureau paid said fund of $10,116.70 over to him to be distributed to those persons entitled under the laws of the State of Tennessee to take the personal property of said insured.

It appears that the policy was issued to "Richard Williams," but there is no question about the identity of the insured.

The claimants to this fund are:

(1)  The administrator of Henry Williamson, claiming the accrued installments between the death of Richard and the death of Henry, about $4,000, on the ground that Henry was the beneficiary in the policy.

(2)  Alberta Jackson, the illegitimate niece, being the illegitimate daughter of an illegitimate sister of the illegitimate insured, Richard. She claims the whole fund as the only legal heir.

(3)  The State of Tennessee, claiming that Henry was not the beneficiary and that Alberta Jackson is not capable of inheriting.

(4)  The United States, claiming that the fund, being the proceeds of a War Risk Insurance policy, must escheat to the United States and not to the State of Tennessee.

1.  No part of this fund can be decreed to the administrator of

Henry Williamson for two reasons: (a) He could not have taken as beneficiary under the policy. (b) He was not designated beneficiary.

(a) The evidence shows that Henry Williamson was not married to Novella Tate, the mother of Richard.

■ And the evidence of their associates and people living in their neighborhood shows that they did not live together as husband and wife or recognize and treat each other or hold each other out as such, therefore no presumption of marriage could arise (38 C. J., 1323, 1324). It was admitted that he was the natural father of Richard.

■ He was, therefore, not within the class of permissible beneficiaries of war risk insurance.

The War Risk Insurance Act, as amended and reenacted, provides that the beneficiaries of insurance shall be: "spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law, or sister-in-law." U. S. C. A., Title 38, sec. 11, June 7, 1924, chap. 320, sec. 300, 43 Stat., 624; Mar. 4, 1925, chap. 553, sec. 12, 43 Stat., 1308; as amended July 2, 1926, chap. 723, sec. 14, 44 Stat., 798; May 29, 1928, chap. 875, sec. 13, 45 Stat. 967; July 3, 1930, chap. 863, sec. 1, 46 Stat., 1016. This is the latest enactment.

■ Subsequent amendments of War Risk Insurance Act relate back to time of passage of original act as regards rights of persons insured. United States v. Carlson, 99 Cir., 44 F. (2d), 5.

■ The interest of a beneficiary of a war risk insurance policy is vested only so far as the government makes it so, and such interest may be divested or changed by the government without in any. way transgressing any obligations. White v. U. S., 270 U. S., 175, 46 S. Ct., 274, 70 L. Ed., 530.

■ Rights of beneficiaries may be changed by amendment of the statute after death of insured. United States v. Chavez, 10 Cir., 87 F. (2d), 16.

Subsections (4) and (5) of sec. 424 of Title 38 U. S. C. A. (June 7, 1924, chap. 320, sec. 3, 43 Stat., 607; Mar. 4, 1925, chap. 553, sec. 1, 43 Stat. 1302), defining words used in Title 38, read as follows:

"(4) The term 'parent' includes a father, mother, grandfather, grandmother, father through adoption, mother through adoption, stepfather, and stepmother, either of the persons in the service or of the spouse.

"(5) The terms 'father' and 'mother' include stepfathers and stepmothers, fathers and mothers through adoption, and persons who have stood in loco parentis to a member of the military or naval forces at any time prior to his enlistment or induction for a period of not less than one year."

■ In Tudor v. U. S., D. C., 3 F. (2d), 386, 387, the court in construing these sections said:

"Examination of all the various amendments and re-enactments of the War Risk Insurance Act discloses that, in the parts thereof devoted to various gratuities, the terms 'father' and 'mother' are generally used, the term 'parent' as a sometime synonym by 'the context' required; but in the part devoted to insurance the term 'parent' is exclusively used. It would seem, therefore, that the beneficiaries of insurance do not include a person in loco parentis. They are excluded from the insurance, but admitted to the gratuities. Why Congress thus discriminated is not apparent, no more than why it excluded grandparents from the gratuities, but admitted them to the insurance. Nor is it material. The will of Congress controls, and to ascertain it every word must be given effect, every term must be given the meaning by Congress prescribed. When in repeated enactments it defined 'parent' exclusive of persons in loco parentis, 'father' and 'mother' inclusive of them, and then limited insurance beneficiaries to 'parent,' its intent is clear; and it and settled principles of construction would be violated did the court do what Congress did not, viz., extend 'parent' to include persons in loco parentis.''

Henry Williamson, being the putative father of an illegitimate child, could not have been made a beneficiary in the war risk policy under the above statutes and decisions.

"The father of an illegitimate child is not within the meaning of the word 'parent' . . . in War Risk Insurance Act, . . . and cannot be made a beneficiary of war risk policy." Howard v. U. S., D. C., 2 F. (2d), 170.

And Henry Williamson could not have claimed as beneficiary (even if designated as such) on the ground that he stood in loco parentis to Richard during his minority. Tudor v. U. S., supra.

Some Federal cases seem to hold that a person acting in loco parentis to the insured during his minority could claim as beneficiary, but under the holding in Tudor v. U. S., supra, it is our opinion that he could not so claim. We are bound by the definition of the word "parent" given in the Act.

And, as will be hereinafter shown (b), he was not named beneficiary. The right of a person to claim on the ground of standing in loco parentis to the insured (if permitted) would depend upon his being designated the beneficiary in the policy. O'Quain v. U. S., D. C., 28 Fed. (2d), 350; Id., 5 Cir., 31 F. (2d), 756.

In the absence of a designated beneficiary, the claimant's right to inherit must depend upon the state law. U. S. C. A., Title 38, sec. 514. That is, the insurance is payable to the estate of the deceased, to be inherited by the legal heirs under the state law. O'Quain v. U. S., supra.

No statute has conferred upon illegitimates inheritable blood on the father's side. An illegitimate cannot inherit from his

putative father, nor can the putative father inherit from his illegitimate child. Under the common law illegitimates were treated as having no father, and this common-law rule has not been modified or changed by any statute in this state; and, so far as inheritable blood is concerned, illegitimates are still treated as though they were without father, and without paternal relatives.

The natural father of a bastard cannot inherit or take property of the bastard in the absence of a statute changing the common-law rule in that regard. 10 C. J. S., Bastards, 138, 139, sec. 29d.

(b) The exhibits to the answer of the administrator of Richard Williamson to the petition of the administrator of Henry Williamson, and the exhibits to the answer of Alberta Jackson to said petition, being letters from officials of the United States Veterans' Administration, show that no beneficiary was named in the policy.

■ The exhibits to the answer of A. A. Adams, Adm'r., and to the answer of Alberta Jackson to the intervening petition of the administrator of Henry Williamson were excepted to, but does not appear that the exceptions were drawn to the attention of the Chancellor or that he ever passed on same. This being true the exceptions were waived and the exhibits were considered in evidence. Gibson's Suits in Chy. (4th Ed.), sec. 535, note 22a; Wells v. Jenkins, 7 Tenn. Civ. App. (7 Higgins), 566; Montgomery v. Coldwell, 82 Tenn. (14 Lea), 29, 37.

■ Where exhibits to pleadings are properly filed and considered in the lower court without objection, or where the objections have been waived, they may be considered in evidence, and objections, made in the appellate court, come too late. Gibson's Suits in Chancery (4th Ed.), sec. 468, note 33; Warner v. Maroney, 16 Tenn. App., 78, 66 S. W. (2d), 244; Powell v. Barnard, 20 Tenn. App., 31, 95 S. W. (2d), 57.

There is a stipulation in the record to which is attached a photostatic copy of a claim for disability benefits made by Richard Williamson. In this document, after the words ''Name of beneficiary,'' is written ''Henry William, father.''

■ This instrument was not an attempt to change the beneficiary in the policy, or a will. However, under the holding in section (a), this is immaterial.

■ It results that the rights of the heirs depend upon the laws of inheritance of Tennessee. In the absence of a named beneficiary the insurance is payable to the estate of the deceased, to be distributed by his administrator to those persons entitled under the laws of the State of residence of the insured to take his personal property, ascertained as of the date of the death of the insured, with the heirs of those dying after the insured representing them in such distribution, regardless of whether such representatives fall within the permitted class of beneficiaries as defined in the World War

Veterans' Act, 1924, 38 U. S. C. A., sec. 421, et seq. Wade v. Madding, 161 Tenn., 88, 97, 28 S. W. (2d), 642, 645, and cases therein cited; Stafford v. Stafford, 170 Tenn., 142, 145, 93 S. W. (2d), 332.

2. There are three Tennessee statutes providing for inheritance by and from illegitimates—Shannon's Code, secs. 4166, 4167 and 4169, which are as follows:

Section 4166: ''When an illegitimate child dies intestate without child or children, husband or wife, his real and personal estate shall go to his mother; and if there be no mother living, then equally in his brothers and sisters by his mother, or descendants of such brothers and sisters. (1819, chap. 13, last part; 1851-52, chap. 39.)''

Section 4167: ''The estates, both real and personal, of illegitimate persons dying intestate in this state, leaving no relatives entitled by existing laws to his or her estate, shall go to such persons as would, had the intestate been legitimate, have been his or her heirs on his or her mother's side, in such way and proportions, and under the same rules, as provided by existing laws of descent of real and personal estate among legitimates who have no kin on the father's side. (1885, chap. 34, sec. 1.)''

Section 4169: ''Where any woman shall die intestate, having a natural born child or children, whether she also leave a legitimate child or children, or otherwise, such natural born child or children shall take, by the general rules of descent and distribution, equally with the other child or children, the estate, real and personal, of his, her, and their mother; and, should either of such children die intestate, without child, his or her brothers and sisters shall, in like manner, take his or her estate. (1866-67, ch. 36, sec. 10.)''

A history of these Acts is set out in Sizer's Pritchard on Wills and Executors, sec. 779:

■■ ''The ordinary statute of distribution does not apply to bastards, unless they are embraced by its terms or by necessary implication, but the distribution of the estates of such persons, and of estates of mothers who leave legitimate and illegitimate children, is provided for by other statutes. Except, however, to the extent of the statutory modifications, the rule of the common law that a bastard has no heritable blood, still prevails in this State.

''By the act of 1819, ch. 13, where there was no lawful issue, illegitimate children were allowed to take the property of their mother, both real and personal, 'by the general rules of descent and distribution'; and it was provided that 'should either of such children die intestate, without child, his or her brothers and sisters shall, in like manner, take his or her estate.' This statute only made the bastard the heir and distributee of the mother if she had no legitimate child, but did not entitle such child to take as heir or distributee of any other relative, lineal or collateral, of the mother. But the brothers and sisters of an illegitimate child dying intestate

were entitled to his estate, whether some or all of such brothers and sisters were legitimate or illegitimate.

"The acts of 1851-2, chap. 39, incorporated into the Code, provides that when an illegitimate child dies intestate, without child or children, husband or wife, his real and personal estate shall go to his mother; and if there be no mother living, then equally to his brothers and sisters by his mother, or descendants of such brothers and sisters. The succession of property under this statute is as follows: (1) To the child or children of the illegitimate, if any; (2) if none, to the surviving husband or wife, as the case may be, if any; (3) if none, to the mother, and (4) if the mother be dead, to the brothers or sisters of the intestate by his mother, or their descendants. But this statute does not entitle illegitimate brothers or sisters to succeed to the real or personal estate of a deceased legitimate brother, although, as we have seen, he might have inherited from them.

"But the unequal operation of this statute was remedied by the act of 1866-7, chap. 36, sec. 10, which provides that where any woman shall die intestate, having a natural born child or children, whether she also leave a legitimate child or children, or otherwise, such natural born child or children shall take, by the general rules of descent and distribution, equally with the other child or children, the estate, real and personal, of his, her, and their mother; and should either of such children die intestate, without child, his or her brothers and sisters shall, in like manner, take his or her estate. This act does not change the course of descent and distribution prescribed by the act of 1851-2, and incorporated into the Code, but was passed to enable children, legitimate and illegitimate, born of the same mother, to take her estate equally, and to enable them to inherit equally as between themselves.

"But none of these statutes provided for the case of a bastard dying unmarried, without issue, and without mother, brothers or sisters, surviving him. This case is provided for by the act of 1885, chap. 34, sec. 1, prescribing that the estates, both real and personal, of illegitimate persons dying intestate, in this State, shall go to such persons as would, had the intestate been legitimate, have been his or her heirs on his or her mother's side, in such way and proportions, and under the same rules, as provided by existing laws of descent of real and personal estate among legitimates who have no kin on the father's side."

It is contended for Alberta Jackson that Shan. Code, sec. 4167 (Acts of 1885, chap. 34, sec. 1) gives her the right to inherit.

The State of Tennessee and the United States insist that Alberta Jackson is not capable of inheritance, therefore the fund must escheat. They rely on the case of Giles v. Wilhoit, Tenn. Ch. App., 48 S. W., 268. In that case there was a contest between an

illegitimate nephew and an illegitimate sister of the illegitimate deceased. The court held that the porperty should go to the illegitimate sister under Shan. Code, sec. 4166. The court construed the last clause of that section to include only legitimate ''descendants of such brothers and sisters.'' This excluded the illegitimate nephew, but permitted to the illegitimate sister to inherit under this section 4166 under the clause ''then equally to his brothers and sisters by his mother.'' The Supreme Court in commenting on this case, in the case of Laughlin v. Johnson, 102 Tenn., 455, 52 S. W., 816, 817, said:

''It is insisted, however, that this construction is out of line with Giles v. Wilhoit, 48 S. W., 268, a case decided by the chancery court of appeals, whose finding was afterwards affirmed by this court. That case involved a controversy between an illegitimate sister of an illegitimate brother, who died without issue and intestate, and an illegitimate niece of that brother, over the estate of the deceased. It arose under, and called for a construction of, section 4166 of Shannon's Code. That section is as follows: 'When an illegitimate child dies intestate without child or children, husband or wife, his estate shall go to his mother, and if there be no mother living then equally to his brothers and sisters by his mother or descendants of such brothers and sisters.'

''The words of difficulty in this section were the last, 'descendants of such brothers and sisters,' and the question was, should the line of descent thus provided for be extended to illegitimates, or be confined to legitimates? and as these terms admitted of either construction, in recognition of the well-settled rule of interpretation of statutes that the common law must be allowed to stand unaltered as far as is consistent with a reasonable construction of the new law (Arthur v. Bokenkam, 11 Mod., 148; Greenwood v. Greenwood, 28 Md., 369; Horne v. Memphis & O. R. Co., 41 Tenn. (1 Cold.), 72; Eaton v. Dickinson, 35 Tenn. (3 Sneed), 397), the phase was construed as if it read, 'legitimate descendants,' etc. In other words, the courts would not go further in the recognition of inheritable blood in illegitimates than the legislature had unmistakably gone, and it being left in doubt, by the use of the terms in question, what line of descendants should take under the conditions prescribed by that section, a construction was adopted which involved the least departure from the principles of the common law.'' Dennis v. Dennis, 105 Tenn., 86, 58 S. W., 284.

In the present case the deceased illigitimate Richard would have no heirs under Shan. Code, secs. 4166 and 4169, under the holding in Giles v. Wilhoit, supra, as Alberta is not a legitimate descendant.

Richard's estate must therefore descend under Shan. Code, sec. 4167, which states that it is to provide for estates of illegitimates ''leaving no relatives entitled by existing laws to his . . .

estate.'' That section provides that the estate ''shall go to such persons as would, had the intestate been legitimate, have been his heirs on his . . . mother's side, in such way and proportions, and under the same rules, as provided by existing laws of descent of real and personal estate among legitimates who have no kin on the father's side.''

The effect of this provision is to cause this fund to be distributed in accordance with Shan. Code, sec. 4172, subsec. 5:

''The personal estate as to which any person dies intestate, after the payment of the debts and charges against the estate, shall be distributed as follows: . . . (5) . . . to . . . the children of such brothers and sisters representing them.''

The case of Giles v. Wilhoit, supra, is easily distinguished from the present case.

In every Tennessee case which has been called to our attention the rights of the heirs of the illegitimate have been determined by Shan. Code, sec. 4166 or 4169, but where it is not controlled by those two sections then it may be controlled by Shan. Code, sec. 4167.

Shannon in his note to this section says:

''The rules of descent prescribed by sections 4163 to 4165 and the rules of distribution prescribed by sections 4172 and 4173 do not apply to illegitimates, except as modified by statute. Webb v. Webb, 3 Head [68], 69; Kelly v. Jackson, 2 Shan. Cas. [198], 200. Said rules are modified by sections 4166 to 4169. By section 4167, said rules are so far modified as, where there is no one to take the estate of an illegitimate intestate under sections 4166 and 4169, to make said sections 4163 to 4165, as well as sections 4172 and 4173, applicable, so that the estate (real and personal) will go as that of a legitimate intestate who leaves no kin on the father's side.''

It might be said that the court should construe the word ''heirs'' to mean ''legal heirs.'' But that would make the act meaningless, as an illegitimate can't have legal collateral heirs.

We are of the opinion that the act of 1885 (Shan. Code, sec. 4167) covers this case and must be construed to allow Alberta Jackson to inherit this property, and that the case of Giles v. Wilhoit, supra, does not apply to this case.

3 and 4. As we have held that the fund will be inherited by Alberta Jackson, the property will not escheat to either the State of Tennessee or to the United States, and it is unnecessary to consider their rights any further.

It results that all the assignments of errors of all the parties are overruled and the decree of the Chancellor is affirmed, and the administrator of Richard Williamson is directed to pay said fund to Alberta Jackson after the payment of the costs of administration and the cause is remanded to the Chancery Court of Wilson County for proper orders in the administration of said estate. The costs of

the appeal are adjudged against the administrator of the estate of Richard Williamson, deceased.

Faw, P. J., and Felts, J., concur.