# WEBB et ux. v. SCHULTZ et al.
## 218 S. W. (2d) 758.

Eastern Section.   September 17, 1948.

Petition for Certiorari denied by Supreme Court, December 17, 1948.

588

Hugh C. Simpson, of Knoxville, and D. C. Bogart, of Sevierville, for complainants.

Privette & Morton and W. Clyde Buhl, both of Knoxville, for defendants.

HOWARD, J. This suit was filed by D. M. Webb and wife, Paralee Webb, complainants below, seeking to reform a deed so as to establish their claim to a life estate in the Ashley A. and Nancy Webb farm located in the First Civil District of Sevier County, in which D. M. Webb formerly owned a two-fifths and Paralee Webb a one-fifth undivided interest as tenants in common w'th defendant, Ida Webb Schultz, sister of D. M. Webb, who before purchasing complainants' three-fifths interest, owned the remaining two-fifths interest in said farm. The other defendant, Elsworth Schultz, is the son of Ida Webb Schultz and a nephew of D. M. Webb.

Because of being related to some of the litigants the regular Chancellor recused himself, and Chancellor J. R. Ketron was designated to hear the case. However, he became ill before the case was ready for trial and the Chief Justice designated the Hon. Joe W. Worley, Chancellor of the First Chancery Division, to hear the cause.

After hearing all the proof, the Chancellor sustained defendants' plea of *res adjudicata* and dismissed the bill, and complainants have appealed in error to this Court.

Because the record is large, the pleadings voluminous, and there being thirty-one assignments of error, we shall consider only those matters which we think are determinative of the issues involved.

The original bill alleges in substance that complainants contracted with the defendant, Ida Webb Schultz, through her agent, Elsworth Schultz, to convey to her their three-fifth (3/5) undivided interest in the farm for and in consideration of the sum of Twelve Hundred and Fifty ($1250.00) Dollars cash to each of them and the further consideration that the complainants remain in possession of said lands as life tenants during the natural life of both or either of them.

That pursuant to their consent said Elsworth Schultz escorted them to the office of his attorney at Sevierville, Tennessee, which was several miles from their home, and it was then and there explained to said attorney the terms and conditions under which complainants were conveying their undivided interest in said farm to Ida Webb Schultz; that Elsworth Schultz represented to complainants that it would be more practical and convenient to defendants in obtaining a loan if complainants would convey their interests in said farm to his mother; that

proper papers preserving their life estate in said farm would subsequently be executed by the parties, which complainants agreed to upon advice that such an arrangement was lawful and would protect their rights in the premises; and, relying upon his representations and advice that they would thus retain their life estate in said lands, they executed the title papers drafted for their execution and caused same to be delivered to defendants; and that papers purporting to carry out the agreement preserving complainants' life estate as contemplated by the parties were also drafted by defendants' attorney and complainants signed said papers.

That on the ———day of December, 1946, defendants sought to evict and dispossess complainants of said farm by proceedings filed before Chan Huskey, a Justice of the Peace, from the Third Civil District of Sevier County, Tennessee, wherein it was averred that complainants were in unlawful possession of said farm and that defendants were owners thereof and entitled to possession.

In their prayer for relief, complainants ask that the deeds be reformed to conform to the original agreement of the parties so as to preserve their life estate; that an injunction issue restraining the defendants from interfering with complainants' possession, or from encumbering, transferring or disposing of said property, and that complainants be decreed a judgment against Elsworth Schultz for $3,750 as damages for his unlawful conduct.

Thereafter, complainants filed three separate amended and supplemental bills, in which they, first, alleged insolvency; second, sought to have deed in question set aside and cancelled; third, made Ray Noland, Sheriff of Sevier

County, and Chan Huskey, Justice of the Peace, party defendants.

To the original bill the defendants filed a plea of *res adjudicata* setting forth the fact that on July 13, 1945, in a former suit styled D. M. Webb et ux. v. Ida Webb Schultz et al., No. 3394 on the Rule Docket of the Chancery Court of Sevier County, complainants alleged substantially the same set of facts; that in the former suit complainants sought to have a parol contract or agreement set up and established and construed by decree of the Court; that the rights and interests of the parties in said farm be ascertained and decreed, and that complainants' interests therein be fully protected by proper decree; that defendants be required by mandatory decree to execute, sign, acknowledge and deliver said lease agreement to complainants in order that they might have the same recorded as a muniment of title, and that complainants might have such other, further and general relief as they were shown to be entitled to; that by amendment to the original bill in the former suit complainants alleged that defendants had been guilty of fraud, deceit and misrepresentation; that defendants were fraudulently seeking to avoid their responsibilities under the agreement and alleged that complainants were entitled to damages in the sum of $6,000.

The plea of *res adjudicata* also shows that defendants filed a demurrer to the former cause, setting up as a defense that the original bill sought to enforce an oral or verbal agreement or lease of land for more than one year in violation of the statute of frauds, and that said bill also showed on its face that it sought to vary and contradict the terms of a written instrument; that said demurrer was sustained by the Chancellor and later affirmed by

the Supreme Court of our State in Webb et al. v. Schultz et al., 184 Tenn. 235, 198 S. W. (2d) 333.

On March 19, 1947, Chancellor Ketron entered an order denying defendants' motion to dismiss the original bill and dissolve the injunction on defendants' plea of *res adjudicata*, but specifically allowed defendants to rely upon all questions raised therein in their answer.

Defendants in their answer did not waive their plea of *res adjudicata* but specifically relied thereon and expressly incorporated said plea, together with exhibits thereto, in their answer.

As a further defense defendants averred that complainants in their original bill and amendments thereto sought to set up or enforce an oral or verbal agreement, contract or lease of land for more than one year in violation of the Statute of Frauds as set forth in Code Section 7831; that complainants' bill on its face sought to vary and contradict the terms of a written instrument or instruments by parol evidence—namely, the two deeds to Ida Webb Schultz from complainants; and that an attempt was being made to establish an oral agreement by the parties to the suit anterior to, or simultaneous with, said written deeds.

Defendants entered a plea of laches on the part of complainants and admit they have mortgaged the farm.

Answering further, defendants denied that Elsworth Schultz solicited complainants to sell their interests in the farm; denied there was ever any agreement whereby complainants were to remain in possession of said farm as life tenants, or that complainants signed the deeds with the belief that said deeds contained any agreement giving complainants a life tenancy; defendants denied fraud, imposition or deception was practiced by them

upon complainants, or that Elsworth Schultz had been guilty of misconduct or unlawful acts, or the defendants have withheld from public record any document entitled to registration; denied that any instrument was ever executed by the parties granting complainants a life estate in said farm, or that complainants were entitled to have deeds reformed.

They averred that at the time the farm was purchased by Ida Webb Schultz July 15, 1949, it was involved in a partition suit in the Chancery Court at Sevierville; that D. M. Webb hastily worked up this suit and had it filed in the name of Lillie Webb Templin, a sister, because he did not want the suit filed by Hettie Dogart, another sister, or the Bogart family; that D. M. Webb visited Elsworth Schultz, urging Schultz to buy the farm; that after the farm was purchased Schultz offered to sell it to other members of the family for what he paid for it, but this offer was rejected; that defendants have erected a new barn on the property at great expense.

Further answering, defendants averred that Ida Webb Schultz in April, 1924, conveyed her one-fifth undivided interest in the farm to D. M. Webb; that Webb executed three promissory notes as a part payment for her share; that said notes were never paid and that the cancellation of this indebtedness was a portion of the consideration; and that complainants in realty owned only a two-fifths interest in the farm.

Defendants further averred that the use and occupancy of the farm by complainants was a permissive use only and that defendants were willing for complainants to live on the property and have the use of it until the defendants were ready to sell the same or make other use of it.

On May 5, 1947, Chancellor Ketron entered an order modifying the injunction which had previously been issued insofar as it restrained defendants from dispossessing complainants under the judgment rendered by Chan Huskey, Justice of the Peace, the order providing that the injunction be dissolved in all respects except that it should continue in full force insofar as it restrained defendants from encumbering or disposing of said farm. This order also provided that the case be heard on oral testimony of witnesses introduced in open Court on a date to be fixed by the Court, which order was approved without exception by attorney for complainants.

On May 10th, complainants filed a petition to rehear, in which they re-stated the alleged wrongs previously complained about with the additional averment that complainants were seriously ill and unable to appear for trial on oral testimony and that defendants had obtained a writ of possession from Chan Huskey, J. P., to dispossess them of said farm.

On May 17th, without obtaining leave from Chancellor Ketron and without notice to defendants, complainants filed an amended and supplemental bill attacking the proceedings in the Magistrate's court and alleging that defendants had obtained a writ of possession on the Magistrate's judgment and were attempting to dispossess complainants of the farm. In said amended bill Sheriff Ray Noland and Chan Huskey were made party defendants to the litigation. In their prayer for relief complainants sought to enjoin Huskey from issuing a writ of possession and sought to restrain the Sheriff from serving said writ; also that the proceedings before Huskey be declared null and void.

■ Included in said amended bill was the following statement required by our Code: "This is the first application for an injunction about the matters herein complained." This bill was presented to the Hon. William C. Burton, Judge of the Circuit Court of Knox County by D. C. Bogart, attorney for complainants, but Judge Burton was not advised by said attorney that an injunction covering the same subject matter had been previously issued and that same had been previously modified in part and dissolved in part by Chancellor Ketron. It is apparent that all rules of procedure regulating the issuance of injunctions were intentionally ignored by counsel in an effort to circumvent Chancellor Ketron's order modifying the original injunction, for where an injunction has been dissolved for want of equity in the bill an *ex parte* injunction will not be granted upon an amended bill, or upon a new one supplying the equity of the old, but the Court will require notice to the opposite parties. Gibson's Suits in Chancery, 4th Ed.. Sec. 832.

On May 21st, defendants with the approval of Chancellor Ketron filed a cross-bill against the Webbs in which it was charged that cross-defendants had set out upon a course of delaying in every way possible the hearing of the cause and the execution of the writ of possession awarded by Esq. Huskey. Upon grounds alleged in the cross-bill, Chancellor Ketron issued an injunction restraining cross-defendants from filing further pleadings and from obtaining additional fiats without first making application to his Court and after giving due notice to cross-complainants' attorneys; also cross-defendants were enjoined from taking depositions of witnesses since an order had previously been entered to hear the cause on oral testimony.

On May 21st, Chancellor Ketron became ill, and upon being notified the Chief Justice of the Supreme Court designated Chancellor Worley to hear the cause.

On June 30th, Chancellor Worley entered an order dissolving the injunction which had been issued by Judge Burton upon the amended and supplemental bill filed by complainants; ordered that the interlocutory decree of Chancellor Ketron modifying the original injunction should remain in full force and effect; and further held that the motion of the complainants to dissolve the injunction granted on the cross-bill of defendants should be overruled, except that said injunction be modified so as to permit complainants to take the depositions of such persons as were physically unable to attend the trial of the cause. This order also dismissed complainants' petition and amended petition to rehear filed May 10th. It further provided that the cause be tried on oral testimony at Sevierville, Tennessee on July 1, 1947.

On March 27, 1948, complainants filed in this Court a petition for diminution of the record in this cause, raising the question that the minutes of the Chancery Court at Sevierville had not been signed by Special Chancellor Worley; that because the minutes were not signed, there were no valid and subsisting final decrees. On April 10, defendants, in response to complainants' petition, filed their petition for diminution of the record to show that the minutes of said Court were signed by Chancellor Worley on March 30th. Attached to the defendants' petition, marked Exhibit D, is a certificate of the Clerk and Master of Sevier County which shows that the Chancery Court there keeps its minutes open as authorized under Code Sections 10490 through 10532, and that the minutes of the October, 1947, term of Court had

not been adjourned by the Court in course on April 7, 1948. Complainants attack the following orders and decrees:

(1) Final decree dated July 25, 1947;

(2) Order for hearing on petition to rehear dated September 23, 1947;

(3) Decree on petition and amended petition to rehear and on plea to jurisdiction dated October 30, 1947.

It appears that the final decree was entered on the regular minutes of the Court and that the other two orders were entered in the Chamber's Minute Book. Under Code Section 159 the terms of the Chancery Court of Sevier County begin on the third Mondays in April and October. Since the Chancery Court of Sevier County keeps its minutes open under the provisions of Code Section 10502, we think that it was proper for Chancellor Worley to sign said minutes and that there is no merit in complainants' application for diminution of record.

By their act appealing from the decrees and by filing their assignments of error and brief in this cause, thus perfecting their appeal as granted in said orders, complainants gave verity, if such were needed, to the very orders and decrees complained about in their petition.

In Hamilton v. State, 177 Tenn. 282, 148 S. W. (2d) 375, 376, this same question was considered by our Supreme Court, and Justice DeHaven, speaking for the Court, said:

"We are of the opinion, therefore, that the action of the plaintiff in error in prosecuting his appeal by filing his assignments of error, hereinabove responded to, has itself given verity to the minute entry of July 29th, which, together with the certificate of the clerk of the trial court, constitutes a sufficient authentication of the record of

the trial in the circuit and criminal court, even though said minute entry does not bear the signature of the presiding judge.''

It is insisted here that the Chancellor erred in sustaining defendants' plea of *res adjudicata*; that the record of the former cause, upon which defendants relied, was never introduced as evidence in this case. The record in this case reveals that the record in the former case of Webb v. Schultz was filed as an exhibit to defendants' answer and that the former case was referred to on numerous occasions in the Court below by attorneys and witnesses; that witnesses were questioned concerning same and it was generally treated without objections as a part of the record.

Where exhibits to pleadings are properly filed and considered in the lower Court, and if read during the trial or witnesses examined regarding them without objection, or where the objections have been waived, they may be considered in evidence as a part of the record and objections made thereto in the Appellate Court come too late. Gibson's Suits in Chancery, 4th Ed., Sec. 468, Note 33; Warner v. Maroney, 16 Tenn. App. 78, 66 S. W. (2d) 244; Powell v. Bernard, 20 Tenn. App. 31, 95 S. W. (2d) 57; Adams v. Jackson, 23 Tenn. App. 118, 126 S. W. (2d) 899.

An examination of the original pleadings in the former suit reveals that complainants sought to have the rights and interests of the respective parties in said farm ascertained, declared and decreed; that complainants' interests and rights therein be ascertained and decreed and be fully protected by proper decree; that defendants be required by mandatory decree to execute, sign and deliver to complainants said lease agreement, Exhibit

No. 3 thereto, that same might be recorded as a muniment of title of their interests, and that defendants be restrained from conveying said farm and destroying their rights; that defendants were guilty of fraud, deceit and misrepresentation and that they were fraudulently seeking to avoid their responsibilities under the agreement, and complainants sued for damages.

In the former suit it was held by the Chancellor and his action was affirmed by the Supreme Court, that the proof relating to the alleged transaction was barred by the parol evidence rule and the Statute of Frauds. It is apparent that the alleged lease contract, now relied upon by complainants in an effort to meet the requirements of the Statute, was signed by them subsequent to the opinion of the Supreme Court in the former case, for Exhibit No. 3 to the original bill in the former suit was unsigned while Exhibit No. 3 to the testimony of E. E. Creswell in the present suit is signed by them.

We think that the Court below was correct in sustaining defendants' plea of *res adjudicata*, and that every issue which has been raised in the present suit either was, or could have been, raised in the former suit. Gibson's Suits in Chancery, 4th Ed., Sec. 329; Pile v. Pile, 134 Tenn. 370, 183 S. W. 1004; Jordan v. Johns, 168 Tenn. 525, 79 S. W. (2d) 798; Parkes v. Clift, 77 Tenn. 524; Peeler v. Norris, 12 Tenn. 331; Sale v. Eichberg, 105 Tenn. 333, 59 S. W. 1020, 52 L. R. A. 894; Knight v. Atkisson, 2 Tenn. Ch. 384.

██ ██ In Jordan v. Johns, supra, our Supreme Court said [168 Tenn. 525, 79 S. W. (2d) 801]:

"It is settled law that, as between the same parties, in the same capacities, and touching the same subject-matter, the estoppel of a former judgment or decree is

conclusive, not only as to matters actually put in issue, but equally so as to those which, by due diligence, on the part of the litigant, or those charged with the management of his case, might have been put in issue in the pleadings filed in the former suit. . . .

"The rule of *res adjudicata* is based on the principle not only that the same parties, in the same capacities, should not be required to litigate anew a matter which might have been determined and settled in a former litigation, but on the higher ground, that public policy dictates that litigation should be determined with reasonable expedition, and not protracted through inattention and lack of diligence on the part of litigants or their counsel."

While the case must be disposed of on grounds stated, it may be further said that we have read the evidence and considered the case on its merits and we do not find evidence lacking to sustain the decree of the Chancellor. For reasons indicated, the decree of the Chancellor will be affirmed at complainants' costs.

McAmis and Goodman, JJ., concur.