JORDAN *et al. v.* JOHNS.

(*Nashville*, December Term, 1934.)

Opinion filed February 23, 1935.

ROBERTS & ROBERTS, of Nashville, and W. B. KNOTT, of Murfreesboro, for appellant.

O. B. STARNES and W. R. CHAMBERS, both of Lebanon, for appellees.

MR. SPECIAL JUSTICE ED. J. SMITH delivered the opinion of the Court.

From a decree dismissing his amended and supplemental cross-bill on demurrer, Johns has appealed, and assigned four errors. As the action of the chancellor was based on the application of the rule of *res adjudicata,* it

will be necessary to examine the original pleadings in order to ascertain whether the holographic will of Mary Johns, wife of cross-complainant, was, or by the exercise of proper diligence on his part could have been, set up as a muniment of title in his answer to the original bill.

Claiming that their ancestor, Mary Johns, died intestate on September 28, 1927, seized and possessed of a one-half undivided interest in the property described in the bill, and that they were her lawful heirs at law, Powell Jordan, John Jordan, Ted Jordan, Callie Bond, and Lura Vaughn, the last-named being a minor, filed the original bill in the chancery court of Wilson county, seeking to have the land sold for partition, and an accounting for the rents and profits from the date of Mary Johns' death.

They set up as their muniment of title a deed dated September 12, 1916, by which the land was conveyed by W. B. Johns and wife to D. L. Johns and wife, Mary Johns.

D. L. Johns answered the bill, and also filed his answer as a cross-bill. In his answer, it was alleged that the deed dated September 12, 1916, made Exhibit A to the answer, was null and void, in that it did not contain a granting clause, but, if mistaken in this, the deed should be read in the light of an instrument executed by Mary Johns on August 14, 1911, which, the answer stated, was executed by her in pursuance of an agreement between her and her husband that all property, real or personal, thereafter acquired by them, should be taken in their joint names so that the survivor would take the title. The answer alleged that Exhbit B was probated in the county court of Rutherford county, Tenn., as the

will of Mary Johns, and the defendant Johns averred that said instrument reflected the last wish and will of Mary Johns with respect to all of her property, both real and personal.

This instrument is as follows: "Realizing the uncertainty of life and that death is sure to come I this day will and deed to my husband D. L. Johns all of my personal property and real estate that I may own at my death for love and affection to have and to hold during his natural life and to be disposed of as he sees proper at his death. This being my only and last will deed and testimony this the fourteenth day of August, 1911. Mary Johns."

It was acknowledged before J. C. Ingram, a notary public of Rutherford county, in the form customarily used in the acknowledgment of deeds.

It is clear from the averments of the answer that the foregoing instrument was not set up in the answer of defendant, Johns, as a muniment of title, but was relied on solely for the purpose of corroborating his claim that if the court should hold the deed dated September 12, 1916, was sufficient to convey the title to Johns and his wife, Mary Johns, this instrument should be regarded as evidence that such deed should be so reformed as to constitute Johns and his wife tenants by the entireties.

The answer set up as a muniment of title a deed dated November 10, 1932, made Exhibit C, by which W. B. Johns and wife conveyed the land to D. L. Johns. This deed was executed because Johns had been advised by his counsel that the deed dated September 12, 1916, was void for want of a granting clause, and consequently the legal title remained in the grantors, W. B. Johns and wife.

Assuming the role of a cross-complainant, Johns prayed that the deed dated September 12, 1916, if held valid, be reformed so as to vest the title in him and his wife, Mary Johns, as tenants by the entireties, and that the instrument dated August 14, 1911, should be looked to as evidence by the court in aid of the prayer for reformation.

The complainants, as cross-defendants, demurred to the cross-bill on various grounds, some of which are no longer relevant. The relevant grounds of demurrer were to the effect: (1) That the answer, cross-bill, and exhibits thereto showed on their face that the deed dated September 12, 1916, was adequate to convey the legal title to Johns and his wife, Mary Johns, and that as the deed was executed after January 1, 1914, the date on which the first Married Woman's Act (Acts 1913, c. 26) went into effect, the title was vested in Johns and his wife, as tenants in common, and not as tenants by the entireties. *Gill* v. *McKinney*, 140 Tenn., 549, 205 S. W., 416; (2) that the instrument, made Exhibit B to the answer, was insufficient as a will, to convey land, as it was attested by only one witness, and that it was insufficient as a holographic will, as it did not appear to be in the handwriting of Mary Johns, and did not show compliance with the other statutory requirements necessary for the execution of a holograph; (3) that the instrument was insufficient as a deed, as it attempted to convey property which Mary Johns did not own at the date of its execution; (4) that the deed dated September 12, 1916, could not be reformed, as reformation was barred by the statute of limitation of ten years (Code 1932, sec. 8601). *Barnes* v. *Barnes*, 157 Tenn., 332, 8 S. W. (2d), 481; (5) that the deed dated November 10,

1932, was invalid, in that the title attempted to be conveyed by W. B. Johns and wife to D. L. Johns had been conveyed to D. L. Johns and his wife, Mary Johns, by the deed dated September 12, 1916.

The chancellor sustained each of these grounds of demurrer, holding: (1) That the deed dated September 12, 1916, was valid, and conveyed the title to the land to D. L. Johns and Mary Johns, as tenants in common; (2) that the prayer for the reformation of the deed was denied on the ground that the ten-year statute of limitations barred such relief; (3) that the instrument, made Exhibit B to the answer, was insufficient as a will of land, because it was attested by only one witness, and that it was not good as a deed because it purported to convey property of which Mary Johns was not the owner at the date of its execution; (4) that the deed of November 10, 1932, was invalid, in that the land attempted to be conveyed by it had been validly conveyed to D. L. Johns and Mary Johns, by deed of September 12, 1916.

From the decree of the chancellor, sustaining the demurrer and dismissing the cross-bill, Johns appealed to this court, and assigned five errors, the fourth being to the effect that the chancellor erred in holding that the paper writing of September 12, 1916, was not affected by the instrument of August 14, 1911, evidencing the understanding and agreement between D. L. Johns and wife with respect to the manner in which title to real estate thereafter was to be taken.

This court held that while the deed of September 12, 1916, was inartificially drawn, nevertheless, as the grantees were named in the *habendum* clause, and the deed contained covenants of warranty, and against incumbrances, it was legally sufficient to convey the title

to D. L. Johns and his wife, Mary Johns, and, further, that the prayer for reformation of the deed was barred by the ten-year statute.

The decree of the chancellor was accordingly affirmed, and the cause remanded to the chancery court of Wilson county for the execution of the chancellor's decree.

On April 19, 1934, counsel for Johns filed a petition to rehear, based on the ground that as the court had held the deed of September 12, 1916, valid, with the consequence that the title to the land was vested in Johns and his wife, as tenants in common, the court should have construed the deed in accordance with the agreement executed on August 14, 1911, so as to make the deed conform to the intention of the parties, and vest the title in them as tenants by the entireties, and this on the ground that, as they were ignorant people, they did not understand the legal effect of the deed of September 12, 1916, but instructed the draughtsman so to draw it as to vest the title in them, and the survivor of them.

It was further alleged that within a few days prior to the filing of the petition for rehearing, Johns, incidentally, and for the first time, informed one of his counsel that the instrument of August 14, 1911, was entirely in the handwriting of his wife, Mary Johns, and that counsel, on April 18, 1934, had caused the instrument to be duly and regularly probated as the holographic will of Mary Johns, deceased, in the county court of Rutherford county.

It was further alleged that while the question of the holographic will of Mary Johns was not before the court, counsel felt they should call the matter to the attention of the court, as it was their purpose to bring it to the attention of the chancery court of Wilson county, and

seek, by an amended and supplemental cross-bill, to present a new issue in the cause by setting up the holographic will of Mary Johns as a muniment of title.

On June 23, 1934, the petition to rehear was denied on two grounds: First, that it was a reargument only of questions fully considered on the original hearing; and, secondly, that it presented a question not an issue within the pleading in the cause, namely, reliance on the paper executed in 1911 as a will.

On April 23, 1934, counsel for Johns obtained leave from the chancellor to file an amended and supplemental cross-bill in which the averments of the original answer and cross-bill were set forth with the further averment that only a few days prior to the application for leave to file the amended and supplemental cross-bill were counsel, for the first time, informed by Johns that the instrument dated August 14, 1911, made Exhibit B. to the answer to the original bill, was the holographic will of Mary Johns; a certified copy of the will, and its probate, being exhibited to the amended and supplemental cross-bill.

It was further averred that, as Johns was an ignorant country man who did not understand that by the instrument dated August 14, 1911, any property rights of his wife had been devised to him, he should be allowed, as a new defense, to set up as a muniment of title the holographic will of Mary Johns.

The amended and supplemental cross-bill prayed that the cross-defendants be enjoined from proceeding to take any steps under the former decre of the chancery court, and of this court, until the petition for rehearing had been finally acted on by this court. In granting leave to file the amended and supplemental cross-bill, the chan-

cellor ordered that it be filed under the caption of the original bill, and, further, that it should stand as a new pleading. A temporary injunction was issued in accordance with the prayer of the amended and supplemental cross-bill.

The cross-defendants filed a demurrer, three grounds of which were to the effect that, if Johns, as the amended and supplemental cross-bill alleged, was an ignorant country man, his failure to understand the will of his late wife, Mary Johns, was a pure mistake of law; that by the exercise of proper diligence he and his counsel could have set up the holographic will as a muniment of title in the answer to the original bill; and that in the demurrer filed to the cross-bill attention had been sharply drawn to the fact that, if the instrument dated August 14, 1911, was a holographic will, the answer did not allege such fact.

The chancellor sustained these grounds of demurrer, holding that the new matter alleged in the amended and supplemental cross-bill, that is, the validity of the holographic will of Mary Johns, as a muniment of title, had been adjudicated and determined by the decree sustaining the demurrer to the original cross-bill.

From this second decree of the chancellor, in sustaining the demurrer to his amended and supplemental cross-bill, Johns, for the second time, has appealed to this court, and assigned four errors, which involve but one question, and that is, the correctness of the chancellor's decree in holding that the holographic will of Mary Johns has been put in issue by the answer to the original bill, and its invalidity decreed.

A careful examination of the pleadings in the first cause, as well as a consideration of what was de-

termined by this court by its former decree, lead to the conclusion that the holographic will of Mary Johns was not set up as a muniment of title by the answer to the original bill, but was relied on solely for the evidentiary purpose of being considered by the chancellor in aid of the prayer for reformation of the deed of September 12, 1916.

The critical question, however, is whether, by the exercise of due and proper diligence, the holographic will of Mary Johns could have been put in issue in the first case, for it is settled law that, as between the same parties, in the same capacities, and touching the same subject-matter, the estoppel of a former judgment or decree is conclusive, not only as to matters actually put in issue, but equally so as to those which, by due diligence on the part of the litigant, or those charged with the management of his case, might have been put in issue in the pleadings filed in the former suit.

As a matter of equity pleading, the holograph could properly have been put in issue as a muniment of title by the answer to the original bill. *Simmons* v. *Leonard,* 89 Tenn., 622, 15 S. W., 444; *State* v. *Lancaster,* 119 Tenn., 638, 654, 105 S. W., 858, 14 L. R. A. (N. S.), 991, 14 Ann. Cas., 953.

By the record of probate of April 18, 1934, of the holographic will of Mary Johns, it appears that D. L. Johns, one of the witnesses, testified that the will, from the date of its execution on August 14, 1911, was kept in an iron safe in their home in a rural part of Rutherford county. Mr. Johns knew that this instrument was in the handwriting of his late wife, as it was alleged in his answer to the original bill that it was executed by her in conformity with an agreement he had with her that all

property, real and personal, thereafter acquired, should be taken in such a manner that, on the death of one, the title would accrue to the survivor. The instrument had been probated for the first time on November 16, 1932, or about a week before the original bill was filed. In addition, one of the grounds of demurrer to the original cross-bill was to the effect that if Exhibit B to the answer was a holograph, it was not alleged to be such in the answer.

At this time, when the matter of the first probate was fresh in his mind, and the sufficiency of the instrument as a holograph had been challenged by the demurrer, it was his duty to inform his counsel that the instrument was wholly in the handwriting of his late wife, and, if he did not so inform them, it was their duty to make inquiry of him as to whether it was a holograph.

Instead, however, of making the revelation at such a time when the answer could have been amended and the holograph set up as a muniment of title, it was only after this court had affirmed the decree of the chancellor on the first appeal that Johns informed his counsel that Exhibit B was in the handwriting of his late wife.

Successfully to appeal to a court of equity to the end that a new issue might be presented requires the exercise of more diligence on the part of the litigant, or those intrusted with the management of his case, than is disclosed by the record in the case at bar.

In asking leave to present this new issue, the amended and supplemental cross-bill does not alllege a mistake of law, caused by accident, as defined by equity, suppression of material facts, violation of a fiduciary relation, fraud, or ignorance of law, superinduced by the cross-defendants, or any of them.

The suggestion of Lord Westbury in *Cooper* v. *Phibbs*, 2 H. L. Cas., 170 (1867), that mistake as to the tenor and import of an instrument should be regarded as one of fact and not of law, has not received recognition by courts of equity of this country.

The rule is well settled that a simple mistake by a party as to the legal effect of an instrument is no ground for either defensive or affirmative relief. If there are no elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or other inequitable conduct, the party who knew, or had an opportunity to know, the contents of an instrument cannot be relieved in equity on the ground that he mistook the legal meaning and effect of it. 2 Pomeroy's Equity Jurisprudence (4 Ed. 1918), sec. 843.

The decisions of this court fully are in accord with the rule as stated above. *Trigg* v. *Read,* 5 Humph., 529, 42 Am. Dec., 447; *Sparks* v. *White,* 7 Humph., 86; *Ottenheimer* v. *Cook,* 10 Heisk., 309; *Goff* v. *Gott,* 5 Sneed, 562; *King* v. *Doolittle,* 1 Head, 77, 78; *Boyce* v. *Stanton,* 15 Lea, 346; *Rogers* v. *Smith* (Tenn. Ch. App.), 48 S. W., 700; *Spurlock* v. *Brown,* 91 Tenn., 241, 18 S. W., 868.

If Johns otherwise might have been entitled to equitable relief within any of the exceptions to the rule that a mistake of law will be relieved by equity, nevertheless, such equitable relief should be denied in the instant case, for the reason that it was due to his inattention and negligence, that when his original answer was being prepared he did not reveal to his counsel that Exhibit B to the answer was in the handwriting of his late wife, Mary Johns.

The rule of *res adjudicata* is based on the principle not only that the same parties, in the same capaci-

ties, should not be required to litigate anew a matter which might have been determined and settled in a former litigation, but on the higher ground, that public policy dictates that litigation should be determined with reasonable expedition, and not protracted through inattention and lack of diligence on the part of litigants or their counsel.

What was said by Mr. Justice Cooper in *Parkes* v. *Clift, et al.*, 77 Tenn. (9 Lea), 524, 528, is apposite here. In holding that the estoppel of a former decree extends to all matters material to the decision of the cause which the parties, exercising reasonable diligence, might have brought forward at the time, he said:

"It was the duty of the complainant to present his whole case in the former suit. According to the strict English chancery practice, he could not, pending the suit, have been permitted to bring forward, by way of amendment, facts in his knowledge at the filing of the bill. And we have repeatedly held that after the dismissal of a bill in this court upon demurrer, the cause would not be remanded for the purpose of amending the bill by the insertion of such matter: *McEwen* v. *Gillespie*, 3 Lea, 204; *Fogg* v. *Union Bank*, 4 Baxt., 539; *Puckett* v. *Richardson*, 6 Lea [49], 64. A new bill will not, of course, lie in such a case, for the estoppel of a judgment or decree extends to all matters material to the decision of the cause which the parties, exercising reasonable diligence, might have brought forward at the time: *Thomson* v. *Blanchard*, 2 Lea, 528; *Peeler* v. *Norris' Lessee*, 4 Yerg., 331; *Welsh* v. *Harman*, 8 Yerg., 103; *Aurora City* v. *West*, 7 Wall. [82], 102 [19 L. Ed., 42]; *Stout* v. *Lye*, 103 U. S., 66 [26 L. Ed., 428]; *Knight* v. *Atkisson*, 2 Tenn. Ch., 384. If after a decree a bill would lie to re-

try the cause merely because error has supervened, the facts been misapprehended, or the party had neglected his case, there would be no end to litigation: *Hodsden* v. *Caldwell*, 1 Lea [48], 50.''

The rule announced above often has been recognized and applied by this court.

The decree of the chancellor is affirmed, and the cause remanded to the court below for further proceedings, not inconsistent with this opinion. The appellant will pay the costs.