# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 19, 2011 Session

## LAWRENCE F. GOODINE v. CITY OF CHATTANOOGA

**Appeal from the Chancery Court for Hamilton County**
**No. 08-0853      W. Frank Brown, III, Chancellor**

---

**No. E2010-01240-COA-R3-CV-FILED-DECEMBER 19, 2011**

---

This case concerns the termination of Lawrence F. Goodine ("Goodine") from his job as a police officer for the City of Chattanooga ("Chattanooga"). Goodine was terminated from his job based on certain incidents that resulted in police internal affairs investigations and charges. Goodine appealed his termination to the Chattanooga City Council ("the City Council"), which upheld his termination. Goodine then filed an application for writ of certiorari in the Chancery Court for Hamilton County ("the Trial Court"). Goodine sought reversal of the City Council's decision and his reinstatement as a police officer. The Trial Court affirmed the City Council's decision. Goodine appeals, raising a number of issues. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Lawrence F. Goodine, pro se appellant.[1]

Crystal R. Freiberg[2] and Kenneth O. Fritz, Chattanooga, Tennessee, for the appellee, City of Chattanooga.

---

[1]Goodine was represented by counsel at the City Council proceedings and for some time after the application for writ of certiorari was filed. Goodine's counsel withdrew at the Trial Court level.

[2]By our Order, Crystal R. Freiberg was substituted as counsel by Patrick P.H. Bobo.

# OPINION

## Background

Goodine was terminated from his job as a Chattanooga police officer on April 13, 2007. Goodine's termination followed a disciplinary hearing wherein charges based upon four incidents were sustained against him. The charges consisted of the following: 1) Case #2007-02, Theft/Improper Procedure/Untruthfulness; 2) Case #2007-17, Theft/Improper Search/Improper Procedure/Untruthfulness; 3) Case #2007-18, Theft/Improper Search/Improper Procedure/Untruthfulness; and, 4) Case #2007-19, Improper Search/Improper Procedure/Untruthfulness/Submitting False Report. Goodine appealed his termination to the City Council. The City Council conducted a hearing in the Goodine matter in August 2008. Cognizant of the entire record, we primarily will address the proceedings before the City Council as they pertain to the four incidents that served as the basis for the charges against Goodine and will summarize those four incidents.

Robert Louis Evans ("Evans"), an investigator for the internal affairs division of the Chattanooga Police Department, testified about Internal Affairs Case #2007-02. This case concerned the stop of Timothy Baker ("Baker") by Goodine. According to an investigative report on the incident submitted by Evans and later entered into the record, Goodine pulled Baker over for not wearing a seatbelt. Evans testified that, as a result of Goodine's position and it being night, Goodine could not have legitimately pulled Baker over for a seat belt violation as Goodine alleged.

Baker admitted to Goodine that there was marijuana in the vehicle. In the course of the arrest, money was taken from Baker. The report stated that Baker was never issued a receipt for the money. $525 was listed as the amount of the money on the seizure form. Another seizure form had no monetary figure. According to the report, however, Baker claimed that when he went to the property division to pick up his money, it was about $160 short of what was taken from him.

Baker testified before the City Council. Baker stated that he had $738 on him at the time of the incident. He stated that he had just been paid from his work as a barber. Baker testified that Goodine told him that he actually counted $625.

Evans also testified about Internal Affairs Case #2007-17. This incident involved the stop of Edward Chapman ("Chapman"). According to the investigative report, Chapman was stopped for a seat belt violation. Goodine proceeded to remove Chapman from his vehicle and perform a search of his person. Chapman claimed that Goodine took money from him; Goodine denied this. Chapman told the police that he had $500 on his

person. Evans testified that no reasonable suspicion justified Goodine's removing Chapman from his vehicle. Further, Evans testified that no probable cause existed to justify a search of Chapman's pockets.

Jason Irvin ("Irvin") of the internal affairs section of the Chattanooga Police Department testified regarding Internal Affairs Case #2007-18. According to the investigative report, Goodine made a stop based on an alleged seat belt violation. The driver could not produce a driver's license and Goodine subsequently searched the driver and passengers. Goodine discovered drugs and money on passenger Jeremy Daniel ("Daniel"). Irvin testified that, based on the video and what Goodine told him, he saw no reason for the passengers to be pulled out during this stop. According to the report, Daniel stated that $1,200 had been taken from him. Goodine turned in $71 to the property division. However, Daniel, testifying before the City Council, stated that the sum of money taken was $291 rather than $1,200, and he did not know where the figure of $1,200 came from.

The fourth incident heard by the City Council was Internal Affairs Case #2007-19. According to the investigative report, Goodine stopped Wallace Maples ("Maples") for a vehicle registration violation. Goodine searched Maples and the vehicle. Goodine also arrested the passenger, apparently based on an outstanding warrant. Goodine charged Maples with possession of marijuana but did not submit any marijuana to the property division. Irwin testified regarding Goodine's basis for the stop:

Q: So according to this affidavit, he's saying that he stopped this vehicle because the New York license plate registration came back as not on file. Is that what he's saying?

A: That's correct.

Q: Does he swear to that in this affidavit?

A: Yes.

Q: And that's in fact not true?

A: That's correct.

Q: Your investigation revealed that that could not have been true?

A: No. An off-line search shows - - any time any tag or a registration or name has been ran, it will show when it was ran and who ran it. And

that was done after the car had already been stopped. His contention was he ran this tag before he stopped the car and that was what gave him justification to stop.

Goodine testified. The gist of Goodine's testimony was that his actions in the four relevant incidents had been mischaracterized. Goodine stated:

I've been labeled as a predator by Chief Cooper. In no means am I a predator, Chief Cooper. I've gone through almost a year of facing allegations that your department pressed upon me. I've fought every single charge because I was innocent. A jury of my peers felt the same. And today I hope that you, the council, councilmen and women feel the same way and give me an opportunity to get my job back. I'm not saying that I am perfect and I never made mistakes, but I'm not a thief.

Goodine acknowledged, however, that he lost a pipe with "dope residue" in it and also incorrectly filled out certain paperwork.

At the end of the hearing, the City Council prepared for a vote. Certain members made statements. Councilman Page stated in regard to Goodine:

There's something about this case that's very scary to me, and that is that I do believe that Mr. Goodine has an ability and a very aggressive nature in looking for narcotics and drugs. I think you do that very well, and I think you fingered individuals that have that lifestyle.

However, I think you have a pattern that I see that does not fit in with the department of, our police department. I think you'll - - I think there has been stops that have, that have been administered. I think there is procedures that have been broken. I think there have been reports that have not been adequate that lead me to believe that I could support Chief Cooper's claim sustaining claims of improper search, improper procedure, and I think that resulted in untruthfulness and submitting false reports.

So my belief is that the termination should be sustained; however, I think we have to, in my - - I need to eliminate that there's theft, because I didn't see any belief or any proof in my mind that Mr. Goodine really stole money in the way I think about it. I can't buy that.

But I do think that he's crossed the line for individual rights. And be

-4-

that someone that is in a drug culture to someone that's in a different culture, I think we're in an uncomfortable position with our police department that we let that continue. I would really hate to see our police force get an okay from this council that these type of stops and searches are okay. That bothers me tremendously.

A motion to sustain Goodine's termination was put forward, but was modified to strike the charge of theft. With this modification, the City Council voted to sustain Goodine's termination with all members present voting aye.

Goodine filed an application for writ of certiorari in the Trial Court. Goodine requested that the Trial Court overturn the City Council's decision to sustain his termination. In March 2010, the Trial Court entered its order affirming the City Council's decision. The Trial Court stated in its Memorandum Opinion and Order, in part:

The seven members of the Chattanooga City Council agreed that the theft charges against Mr. Goodine would not be considered. However, they agreed that the evidence they heard were [sic] sufficient to uphold Mr. Goodine's termination from the CPD based upon the other charges.

It is important to note that not all charges of untruthfulness disappear when the theft charges were not sustained. There were charges of untruthfulness brought against Mr. Goodine for issues unrelated to alleged lying about not having stolen money. One of these issues involve Mr. Goodine's statement concerning where he was when he saw Mr. Baker driving. Mr. Goodine, based upon the video evidence, is clearly wrong or outright lying about such. Mr. Goodine did not change his version after seeing the video. Also, the court agrees that there was no way, based upon the dark conditions and location of the two cars, that Mr. Goodine could have observed that Mr. Baker was not wearing his seat belt. Truth and honesty are essential. Based upon the brief issues, it appears that some things remain the same.

Is there substantial and material evidence to affirm the decision of the Council? The Council agreed, after hearing all of the witnesses, that the non-theft charges were sustained. Based upon the standards set forth above, the court concludes that there is substantial and material evidence to support the decision of the City Council to affirm Chief Cooper's termination of Mr. Goodine. It is important to note that Council members saw the witnesses testify. The Council members were in the best position to judge the credibility of the witnesses.

There were admitted wrongs done by Mr. Goodine. First, he took a pipe with marijuana residue from Mr. Maples. The pipe was not turned into the CPD's property division (or evidence room). Second, Mr. Goodine did not place the amount of money on the seizure form on the Baker case. Third, he did not submit any seizure forms for Mr. Daniel's money. Fourth, Mr. Goodine's versions of where he was and how he stopped Mr. Baker and why he stopped Mr. Maples are shown to be false by video camera and computer logs.

Fifth, the other charges deal with improper procedures and improper searches. Based upon the testimony of General Taylor, Chief Cooper and other CPD officers, the Council could believe that Mr. Goodine did not follow proper procedures in some of his police work and in some of the searches he performed. The intensity of Chief Cooper's testimony and position is not often heard in termination proceedings.

* * *

Mr. Goodine presented his evidence to the Council. He testified. He was ably represented by counsel. He did not prevail before the Council. Based upon the record before the Council and the applicable rules of law. Mr. Goodine cannot prevail on his appeal because there is substantial and material evidence to sustain his termination as an employee of the CPD. The court notes that there were two other pending cases against Mr. Goodine. Due to Chief Cooper's actions in terminating Mr. Goodine, the CPD has not pursued those investigations any further.

Goodine subsequently filed a "motion for reconsideration." The Trial Court treated Goodine's motion as a motion to alter or amend and denied it in May 2010. Goodine appeals.

## **Discussion**

Though not stated exactly as such, Goodine raises four issues on appeal: 1) whether the claims brought by Chattanooga were barred under the doctrines of claim preclusion and res judicata; 2) whether Goodine was wrongfully seized in the context of the Tennessee Constitution; 3) whether the Trial Court committed plain error; and, 4) whether the City Council was required to provide, in writing, findings of fact and conclusions of law, and failed to do so.

Chattanooga argues that none of the issues Goodine raises on appeal were introduced properly at the City Council or to the Trial Court, and, therefore, should not be considered by this Court. It appears, however, that at least the issue concerning the City Council's alleged obligation to provide its findings of fact and conclusions of law was properly asserted below as it was addressed in the Trial Court's original Memorandum Opinion. The Trial Court struck briefs from both sides in its Memorandum Opinion. Mindful of Goodine's pro se status, and, out of concern that these issues may have been unclearly raised, as pertinent, by Goodine at the appropriate levels, we will address all four of his issues.

Our review in this matter is governed by Tenn. Code Ann. § 4-5-322(h), which provides:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (2011).

As we have stated concerning this standard:

"The scope of review in this Court is the same as in the trial court, to review

findings of fact of the administrative agency upon the standard of substantial and material evidence." *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999) (citing *DePriest v. Puett*, 669 S.W.2d 669 (Tenn. Ct. App. 1984)). The "substantial and material evidence" standard has been described as requiring "something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne County v. Tenn. Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citations omitted). "Substantial and material evidence is 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.' " *Pruitt*, 2005 WL 2043542, at *7 (quoting *Lamarr v. City of Memphis*, No. W2002–02087–COA–R3–CV, 2004 WL 370298, at *2 (Tenn. Ct. App. Feb. 27, 2004)) . . . On appeal, this Court affords "considerable deference" to the Board's factual findings based on its determinations of credibility. *See Davis*, 278 S.W.3d at 266 (citing *Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 915 (Tenn. 1999)).

*Macon v. Shelby County Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 508-09 (Tenn. Ct. App. 2009).

We first address whether the claims brought by Chattanooga as grounds for termination of Goodine's employment were barred under the doctrines of claim preclusion and res judicata. Goodine's argument as to this issue, while not entirely clear, appears to be that the dispositions of the criminal cases against the individual defendants in the four incidents for which Goodine was terminated precluded the City Council from affirming Goodine's termination based upon his actions in these four incidents.

In *Lien v. Couch*, 993 S.W.2d 53 (Tenn. Ct. App. 1998), this Court discussed the doctrine of res judicata. We stated:

Res judicata is a claim preclusion doctrine that promotes finality in litigation. *See Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976); *Jordan v. Johns,* 168 Tenn. 525, 536-37, 79 S.W.2d 798, 802 (1935). It bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit. *See Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn. 1995); *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995).

Parties asserting a res judicata defense must demonstrate that (1) a court

of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action. *See Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). A prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the reexamination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the parties' legal rights and relations. *See White v. White*, 876 S.W.2d 837, 839-40 (Tenn. 1994).

*Lien v. Couch*, 993 S.W.2d at 55-56.

We fail to discern how claim preclusion and/or res judicata apply in the manner argued by Goodine. The dispositions of separate criminal cases involving Goodine's alleged victims are not relevant here. It is clear that all the required elements are not satisfied. While the criminal cases against Goodine's alleged victims resulted in final judgments on the merits by a court of competent jurisdiction, those cases did not involve the same parties or their privies as in this case. Additionally, the criminal prosecutions did not involve the same cause of action as in this case. Likewise, Goodine's own criminal case similarly did not involve the same parties or their privies or involve the same cause of action as this case. Further, Goodine's criminal matter utilized a burden of proof distinct from that of the present case. This appeal is fundamentally about reviewing the proceedings that affirmed Goodine's termination. No theory of claim preclusion or res judicata precluded Chattanooga from acting as it did with respect to Goodine.

We next address whether Goodine was wrongfully seized in the context of the Tennessee Constitution. Goodine argues that the manner in which he was questioned by officials during the investigation was contrary to policy and his constitutional rights. Goodine describes how he was questioned but does not consistently cite to the record where relevant as required, thus hampering our review on this issue.

We are aware of an order from the United States Court of Appeals for the Sixth Circuit filed on September 13, 2011 related to a separate civil rights action brought by Goodine against the city of Chattanooga and numerous individuals. The order addresses this issue as it pertains to the United States Constitution. The order states, in part: "If Goodine felt compelled to stay and answer questions, he did so because of the employment consequences and not because he felt unable to terminate the encounter. Goodine was not, therefore, seized within the meaning of the Fourth Amendment." We agree with this analysis, and believe it holds true for Goodine's argument in the context of the Tennessee Constitution. In the first instance, we emphasize that this appeal is not of a criminal nature.

Second, we cannot discern from the record that Goodine ever was seized. The record reflects that Goodine was questioned as part of an internal affairs investigation. The record further contains forms signed by Goodine indicating that he knew that statements he would make would not be used in criminal proceedings against him. Finally, again, this is an appeal regarding termination rooted in a writ of certiorari action, not a criminal matter. In sum, we find no basis in the record to support Goodine's assertion that his constitutional rights were violated in any sense under either the United States Constitution or the Tennessee Constitution.

We next address whether the Trial Court committed plain error. Goodine argues, among other things, that his Sixth Amendment rights were violated as two of his accusers from the disciplinary charges did not testify at the hearing. We respectfully reiterate that this appeal is not of a criminal nature. We cannot conceive of how this argument is relevant to a review of the City Council's decision.

Even if the doctrine of plain error should somehow be applicable here, we do not believe that the Trial Court committed plain error. In its expansive and comprehensive Memorandum Opinion, the Trial Court reviewed the proceedings of the City Council and concluded that the City Council's decision regarding Goodine's employment should not be disturbed. The City Council heard testimony related to the four incidents for which Goodine was terminated. Goodine, represented by counsel, appeared and presented his evidence.

We are aware that the record contains various commendations reflecting that Goodine performed good service as a police officer. However, our review here is narrow, and, notwithstanding good service performed by Goodine elsewhere, the Trial Court did not err in holding that substantial and material evidence supported the City Council's decision.[3]

We finally address whether the City Council was required to provide, in writing, findings of fact and conclusions of law, and failed to do so. A review of the law on this subject yields interesting and somewhat conflicting conclusions. Nevertheless, we need not resolve this question for the purpose of this appeal. There is ample material in the record permitting us to effectively review the proceedings of the City Council and the basis, including findings and conclusions, for the City Council's decision. The record contains the complete transcript of the hearing, including the end portion of the hearing when certain council members made statements, prepared a motion, and held the vote that affirmed

_____

[3]The Trial Court reviewed this matter under the standard set forth at Tenn. Code Ann. § 4-5-322(h), and we do not depart from this standard. However, we note that were we to apply the common law writ of certiorari standard of review, Chattanooga still would prevail as the City Council's decision was supported by ample material evidence in the record.

-10-

Goodine's termination. Investigative reports were entered into the record and referenced over the course of the hearing. The City Council was able to see portions of the videos of the incidents. Goodine, as noted, presented evidence.

Goodine disagrees with the ultimate decision of the City Council. We, however, cannot say that the City Council lacked sufficient evidence to reach its conclusion or that its decision has a mysterious foundation. Put simply, we do not know any additional formulation of facts or conclusions that would be necessary for adequate review in this matter. We affirm the Trial Court on this issue, and, in all respects.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed against the Appellant, Lawrence F. Goodine, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE