# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 26, 2014 Session

## BETTY GRAHAM v. CRYE-LEIKE REALTY CORPORATION ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 13-0299      Jeffrey M. Atherton, Chancellor**

---

**No. E2013-01701-COA-R3-CV-FILED-DECEMBER 29, 2014**

---

At an earlier time, in 2011, Betty Graham had filed a lawsuit arising out of a failed real estate transaction against (1) her real estate agent, Ginny Hall; (2) Crye-Leike Realty Corporation; (3) S&J Southeast Investments, LLC, the potential buyer of her condominium with whom she had unsuccessfully negotiated a contract; and (4) attorney Ellie Hill, her trial court appointed guardian ad litem.  The trial court granted the defendants' Rule 12.02(6) motions to dismiss the complaint for failure to state a claim upon which relief could be granted. Graham appealed, but later voluntarily dismissed her appeal.  Following her dismissal, our mandate, *see* Tenn. R. App. P. 42, 43, was issued on January 4, 2013.  On April 26, 2013, Graham, acting pro se, "refiled" a lawsuit that is functionally identical to her first complaint. In her second suit, she relied upon the saving statute, Tenn. Code Ann. § 28-1-105(a) (2000). The trial court dismissed her second complaint on the ground of res judicata.  We affirm that dismissal. Furthermore, we conclude that Graham's suit is frivolous.  Hence, this case is remanded to the trial court for a determination of the defendants' reasonable fees and expenses associated with this appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Affirmed; Case Remanded for Further Proceedings

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Betty Graham, Jasper, Tennessee, appellant, pro se.

Jonathan Guthrie and McKinley S. Lundy, Jr., Chattanooga, Tennessee, for the appellees, Ellie Hill and Patrick, Beard, Schulman & Jacoway, P.C.

B. Thomas Hickey, Jr., Chattanooga, Tennessee, for the appellees, Ginny Hall and Crye-Leike Realty Corporation.

Kevin B. Wilson, Chattanooga, Tennessee, for the appellee, S&J Southeast Investments, LLC.

**OPINION**

I.

In 2008, Lake Park Condominium, doing business as Signal View Condominium Association ("LPC"), sued Graham to collect homeowners' association dues, fees, assessments, and other charges resulting from Graham's ownership of several condominium units. That lawsuit resulted in a judgment against Graham for $17,662.66. On August 3, 2009, LPC again sued Graham.[1] Chancellor W. Frank Brown, III, acting sua sponte, appointed attorney Ellie Hill as Graham's guardian ad litem to defend LPC's second lawsuit because he had concerns about Graham's mental capacity to proceed pro se. Following a trial, the court entered judgment in favor of LPC in the amount of $29,455.75, consisting of $14,268.75 owed as a result of Graham's ownership of three condo units and $15,187 in attorney's fees incurred by LPC. The trial court also awarded Hill a guardian ad litem fee in the amount of $14,768.45.

On July 13, 2011, Graham filed a complaint against Hill, S&J Southeast Investments, LLC, Crye-Leike Realty Corporation, and real estate agent Hall. All of the defendants except Hill filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief could be granted. The trial court granted the motion, stating as follows:

> The relevant facts are as follows. On July 14, 2010, Plaintiff met with Defendant Elizabeth Hill ("Hill"), who was appointed her guardian ad litem in a pending lawsuit (No. 09-0592). Graham had been given a Purchase and Sale Agreement form between the Plaintiff, the potential seller, and S&J, the potential buyer, concerning a tract of land known as 900 Mountain Creek Road, Unit 225 (the "Real Property"). Prior to Plaintiff's meeting with Hill, Crye-Leike had forwarded S&J's offer (the proposed "Agreement") to Plaintiff and/or Hill, whereby S&J made an offer to purchase from Plaintiff the Real Property for $35,000. . . . The express terms of the Agreement provided for a "Time Limit of Offer" that allowed S&J (as the potential

---

[1]The record does not disclose whether LPC's second lawsuit was associated in some way with its first lawsuit or whether it was for charges accruing after the judgment in the first suit or was for monies due on different units owned by Graham. This uncertainty does not affect our opinion in the instant action.

buyer) to withdraw their offer at any time before acceptance with notice. The deadline for acceptance was July 14, 2010 at 6:00 p.m.

On July 14, 2010, according to Plaintiff, she appeared at Hill's office to accept the offer and to execute the Agreement. Plaintiff says Hill agreed to act as an agent for Plaintiff and to forward the signed Agreement to Crye-Leike pursuant to the terms and conditions of the Agreement before 6:00 p.m. that day. Apparently at some point that day, Plaintiff signed the Agreement purporting to be accepting the offer to purchase made by S&J and Plaintiff left Hill's office "knowing that the sale had been completed and relying upon Defendant to notify Buyer." Based upon these facts, Plaintiff has filed this "Negligence" claim and argued that "Defendant either failed to Notify Buyer of Plaintiff's Acceptance or, Buyer was notified and is in Breach of Contract and Defendant has committed fraud against Plaintiff by allowing said contract to lapse."

\* \* \*

Neither Defendant S&J nor Defendant Crye-Leike dispute the factual allegations in the Complaint. Rather, both Defendants assert no cause of action of negligence has been pled against them. The court agrees. Pursuant to Tenn. R. Civ. P. 12.02(6), Plaintiff has failed to state a claim against Defendant S&J and failed to state a claim against Defendant Crye-Leike.

The undisputed facts are that an offer was made in the Agreement form by S&J through realtor Crye-Leike to purchase the Real Property from Plaintiff for $35,000; however, that offer had to be accepted by the stated deadline of July 14, 2010 at 6:00 p.m. (the "Deadline") There is nothing before the court, and no allegation made by Plaintiff, that in fact that offer was accepted. To the contrary, it appears Plaintiff attempted to make a counter-offer by inserting the words "Subject to Stipulations" on lines 423-430 of the Agreement.

\* \* \*

-3-

Regardless of whether this is characterized as an attempted acceptance of offer by Plaintiff or a counter-offer made by Plaintiff, there is no allegation in the Complaint that this was submitted (or "accepted") before the Deadline. With regards to the potential buyer, S&J, the court is unaware and Plaintiff has pointed to no duty S&J owed to Plaintiff that was breached. With no allegation that the offer/counter-offer was submitted to Defendant S&J or Defendant Crye-Leike by the Deadline, the court is unaware of any duty Defendants S&J and Crye-Leike owed to Plaintiff that the Plaintiff has alleged was breached and how any such alleged breach proximately caused damages to Plaintiff.

\* \* \*

[P]resumably and taking the light most favorable to Plaintiff, Plaintiff is suing Crye-Leike under negligence for not informing Plaintiff that the Agreement was not submitted to S&J (and/or to Crye-Leike) by the Deadline. However, Plaintiff has failed to direct this court to anything showing that Crye-Leike had such duty to inform Plaintiff and what damages failure to inform Plaintiff on July 14 by the Deadline would cause. The court does not find Plaintiff has sufficiently pled negligence or any cause of action, including a duty owed and breached which proximately caused damage, against Defendant S&J or Defendant Crye-Leike.

(Footnotes and citations to record omitted.)

Later, Hill also filed a Rule 12.02(6) motion to dismiss. Graham filed a motion requesting Chancellor Brown to recuse himself, apparently on the ground that the chancellor had appointed Hill as Graham's attorney ad litem. Chancellor Brown agreed to recuse himself and the case was assigned to Chancellor Jeffrey M. Atherton. On March 27, 2012, Chancellor Atherton granted Hill's motion. That order, however, is not in the record before us. On May 14, 2012, the trial court entered final judgment denying all of Graham's pending motions and holding that she "presented no basis for the Court to set aside, alter, or amend the Orders dismissing all claims against the Defendants."

Graham timely filed a notice of appeal, but later filed a motion to voluntarily dismiss her appeal under Tenn. R. App. P. 15(a), which was granted by us on January 4, 2013. Our

mandate issued the same day.

On April 26, 2013, Graham, proceeding pro se, filed the cause of action currently before us. Her complaint states as follows:

> Plaintiff, Betty Graham files this suit within one year of the dismissal pursuant to TRCP 12.02 for failure to state a claim upon which relief could be granted. In the initial case the rights of the properties were not adjudicated, the other parties are placed in the original positions prior to the filing of the suit. The case may be refiled subject to the applicable statutes of limitations. See, e.g., ***Crowley v. Thomas***, 343 S.W.3d 32, 34-35 (Tenn. 2001) ("The saving statute permits a plaintiff who commenced action within the applicable statute of limitations to refile it in the trial court within one year of the order of dismissal.")
>
> *            *            *
>
> Plaintiff *resubmits the her* [sic] *earlier claims*, as stated below, and adds intentional interference with business relationships as a new and different element *all arising out of a contract for the sale of real property entered into in Hamilton County Tennessee on or about July 14, 2010.*

(Italics added.)

The complaint names all of the defendants that Graham sued in her 2011 action, plus the law firm of Patrick, Beard, Schulman & Jacoway, P.C. ("the law firm") where Hill is employed. However, the complaint makes no allegations against the law firm, and, in fact, barely mentions it again after the caption, noting only that Graham signed the contract agreement in the law firm's office. In the case now before us, defendants filed a motion to dismiss, arguing that Graham's action

> is barred pursuant to the doctrine of *res judicata* and /or issue preclusion. All of Plaintiff's claims that were or could have been asserted as a result of the transaction or occurrence relating to the property referenced in her current Complaint have previously been addressed and dismissed on the merits.

The trial court agreed and dismissed the complaint, awarding attorney's fees as a sanction against Graham. She timely filed a notice of appeal.

## II.

The issue presented is whether the trial court correctly held that Graham's claims were barred under the doctrine of res judicata. "A trial court's decision that a claim is barred by the doctrine of res judicata involves a question of law which will be reviewed de novo on appeal without a presumption of correctness." ***Long v. Bd. of Professional Responsibility***, 435 S.W.3d 174, 183 (Tenn. 2014).

## III.

"The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." ***Jackson v. Smith***, 387 S.W.3d 486, 491 (Tenn. 2012). The purposes of the res judicata doctrine are "to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits." ***Creech v. Addington***, 281 S.W.3d 363, 376 (Tenn. 2009). The doctrine is grounded in the public policy principle that "litigation should be determined with reasonable expedition, and not protracted through inattention and lack of diligence on the part of litigants or their counsel." ***Id.*** (quoting ***Jordan v. Johns***, 79 S.W.2d 798, 802 (Tenn. 1935)). The Supreme Court has recently opined on the subject of res judicata:

> The party asserting a defense predicated on res judicata must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

***Long***, 435 S.W.3d at 183.

Graham's complaint admits that she is "resubmitting" her earlier claims, all of which arose out of the same transaction or occurrence as already litigated in her 2011 action. Her addition of a claim of intentional interference with a business relationship does not bar the application of res judicata, because it clearly arose from the same set of facts as the earlier

action – the failed real estate sale – and res judicata bars issues that *could have been* litigated in the earlier suit. ***Jackson***, 387 S.W.3d at 491. Similarly, the addition of the law firm as a defendant does not preclude the res judicata doctrine, because the only potential source of liability of the law firm is under the theory of vicarious liability based on respondeat superior, for the actions of their ostensible agent and employee Hill. As the Supreme Court pointed out in the case of ***Abshure v. Methodist Healthcare***, 325 S.W.3d 98 (Tenn. 2010):

> Thus, where "the injured party sue[s] the actual wrongdoer and los[es] the action on a merits determination, the judgment in that case preclude[s] the injured party from suing the merely vicariously responsible party, as [its] liability [is] purely derivative."

***Id.*** at 107 ("[its]" added by us) (quoting 1 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 5:16, at 537 (2010)). What is described in ***Abshure*** is precisely what happened here. Accordingly, the suit against the law firm is also barred by the doctrine of res judicata.

Graham's sole argument on appeal is that the Tennessee saving statute, Tenn. Code Ann. § 28-1-105, allows her to refile her same claims within one year of her voluntary dismissal of her appeal of the 2011 action. The statute provides in pertinent part:

> (a) If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff *upon any ground not concluding the plaintiff's right of action*, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

(Emphasis added.)

The fatal flaw in Graham's argument, both under the saving statute and the res judicata doctrine, is that her earlier cause of action was fully and finally concluded on the merits. As the Supreme Court has observed,

> In Tennessee, any dismissal of a claim other than a dismissal for lack of jurisdiction, for lack of venue, or for lack of an indispensable party "operates as an adjudication upon the merits," unless the trial court specifies otherwise in its order for

dismissal. Tenn. R. Civ. P. 41.02(3). Guided by this rule, the Court of Appeals has held that an order granting a motion to dismiss for failure to state a claim upon which relief can be granted under Tennessee Rule of Civil Procedure 12.02(6) is an adjudication on the merits. *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 766 (Tenn. Ct. App. 2001), *perm. to app. denied* (Tenn. 2002). We agree with that assessment. Unlike the dismissal of a complaint on procedural or technical grounds, "[t]he sole purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to test the legal sufficiency of the complaint." *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (*citing Sanders v. Vinson*, 558 S.W.2d 838, 840 (Tenn. 1977); *Holloway v. Putnam County*, 534 S.W.2d 292, 296 (Tenn. 1976)). The trial court's judgment granting the Rule 12.02(6) motion to dismiss . . . was, therefore a judgment on the merits for res judicata purposes.

*Creech*, 281 S.W.3d at 378. Consequently, the saving statute does not apply because the first dismissal "conclud[ed] the plaintiff's right of action," Tenn. Code Ann. § 28-1-105; and the fourth element of the res judicata doctrine, "that the underlying judgment was final and on the merits," *Long*, 435 S.W.3d at 183, has been met.

The defendants argue that this appeal is frivolous and ask for attorney's fees on appeal. "A frivolous appeal is one that is devoid of merit, or one that has no reasonable chance of succeeding." *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (citations omitted). Since Graham acknowledges that she is essentially "resubmitting" in her present lawsuit the same claims that were presented in her first lawsuit, the doctrine of res judicata is clearly and without any doubt a complete and total bar to her second lawsuit. In filing that latter suit, she was pursuing a complaint that is "devoid of merit" and had "no reasonable chance of succeeding." *Id.* On remand, the trial court will determine the reasonable fees and expenses to which the defendants are entitled associated with this frivolous appeal.

IV.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Betty Graham. The case is remanded to the trial court for further proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE